BEATMAN ET AL., APPELLANTS, *v.* GATES, APPELLEE.

(No. 1319 — Decided September 21, 1987.)

*Dworken & Bernstein Co., L.P.A.,* and *Barbara J. Gustaferro,* for appellants.

*Reminger & Reminger Co., L.P.A.,* and *Nicholas D. Satullo,* for appellee.

FORD, J. On May 6, 1986, Shirley Beatman ("appellant") filed a complaint against appellee S. E. Gates, M.D. alleging that, in October 1967, appellee had placed an intrauterine device ("IUD") into her. The complaint further alleged that when appellant returned for a follow-up office visit, appellee could not locate the IUD. Appellant's last treatment with appellee occurred in August 1968.

Appellant eventually gave birth to three children. Several years after her final pregnancy, appellant was hospitalized with severe abdominal pain and discomfort. Examinations revealed the presence of the IUD in her abdominal area, which device was

ultimately removed through surgical procedures.

In her complaint, appellant alleged that appellee was careless, negligent, and guilty of medical malpractice by virtue of his failure to: (1) properly place the IUD; (2) locate the IUD; (3) conduct follow-up examinations in an effort to locate the IUD; and (4) notify appellant of a possible malpositioning.

Thereafter, appellee filed a motion for summary judgment contending that the cause of action was time-barred under R.C. 2305.11. Appellant responded by filing a brief in opposition to this motion. On December 16, 1986, the trial court entered summary judgment for appellee.

Appellant claims that the trial court erred in determining that appellant's cause of action against appellee was untimely filed and in entering judgment for appellee on this basis.

R.C. 2305.11 provided, in relevant part, that:

"(A) An action for * * * malpractice, including an action for malpractice against a physician * * * shall be brought within one year after the cause thereof accrued * * *.

"(B) In no event shall any medical claim against a physician * * * be brought more than four years after the act or omission constituting the alleged malpractice occurred. * * *"

In the present action, the trial court rejected appellant's contention that the IUD at issue constituted a foreign object and that, under the discovery rule, the running of the statute of limitations was tolled until the IUD was discovered in her abdomen in April 1985. See *Melnyk* v. *Cleveland Clinic* (1972), 32 Ohio St. 2d 198, 61 O.O. 2d 430, 290 N.E. 2d 916.

As stated by the trial court:

"This court finds that the intrauterine device is not a foreign object for purposes of the foreign object exception to the statute of limitations found in R.C. 2305.11(A) and 2305.11(B).

"This court finds from the face of the Complaint the last treatment plaintiff received from defendant occurred on August 22, 1968, and that the time has since passed to bring action upon the alleged malpractice claim against defendant. The question is, thus, one of law."

This court is of the opinion that, under the circumstances presented, the trial court erred in finding that the intrauterine device placed into appellant did not constitute a foreign object as a matter of law.

Civ. R. 56(C) provides, in pertinent part, that:

"* * * Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * *"

There does not appear to be any present Ohio law, either in statutory or case-law form, dealing with the issue of whether an IUD is, or may be, a foreign object for purposes of the application of the statute of limitations. In support of its ultimate conclusion on this matter, the trial court relied on decisions from other jurisdictions which addressed the same issue now presented. See *Ogle* v. *De Sano* (App. 1984), 107 Idaho 872, 693 P. 2d 1074; *Mayotte* v. *Bauer* (S.Ct. 1986), 130 Misc. 2d 946, 497 N.Y. Supp. 2d 1003; and, *Taddeucci* v. *Weitzner* (S.Ct. 1986), 130 Misc. 2d 853, 497 N.Y.Supp. 2d 997.

As noted by the trial judge, there are certain factual issues the resolution of which the out-of-state courts have found to be determinative of whether a

certain tangible item constitutes a foreign object for statute of limitations purposes. The trial court relied on cases from sister jurisdictions and applied those holdings and their varying factual patterns to the instant issue, concluding that appellant had failed to establish that the intrauterine device inserted by appellee was a foreign object. However, the record reflects that certain determinations of factual matters were made by the trial court in its judgment entry, which were an inappropriate exercise by a trial court in a summary judgment proceeding. Civ. R. 56(C).

The only evidentiary materials before the trial court for its analysis in determining the summary judgment issue appear to have been the parties' pleadings and appellant's answers to the interrogatories submitted by appellee, since our examination of the record does not disclose that any other evidential submissions pertaining to the motion for summary judgment were filed by the parties.

Our perusal of these materials leads us to the conclusion that several genuine issues of material fact remained in dispute subsequent to the filing of the motion for summary judgment in this case with the attendant submissions: for example, whether appellee indicated to appellant while he was examining and treating her that the IUD had repositioned itself within her body, or whether he failed to notify her of such occurrence thereafter; and when appellant knew or should have known that the IUD had migrated from its original location within her body.

Further, it is our opinion that under the circumstances before the trial court, there remains the fundamental, factual question of whether the IUD was a foreign object where it was physically located in appellant's body at some time after its initial insertion and prior to its surgical removal. We subscribe to the view that the factual pattern at this juncture places this case within the rationale stated in *Mayotte, supra,* rather than beyond it as determined by the trial court. Certainly, the device was not performing any birth control chemistry in the appellant's abdominal cavity:

"* * * once the plaintiff * * * had a tubal ligation, her * * * IUD had no further function to perform and no longer belonged in her body. * * *" *Id.* at 948, 497 N.Y. Supp. 2d at 1004.

We look with favor on the conclusion reached in *Mayotte, supra,* and to the factual and legal distinctions made by the court in that opinion.

In view of the fact that genuine issues of material fact exist in the case *sub judice,* the trial court erred in entering summary judgment for appellee.

The judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed
and cause remanded.*

COOK and CHRISTLEY, JJ., concur.