John Joseph POLUSKI and Elmyra Theresa Van Pelt, Co–Personal Representatives of the Estate of Sophia Poluski, Deceased, Plaintiffs,

v.

RICHARDSON TRANSPORTATION, a Missouri Corporation, d/b/a Richardson Para–Lift Service, Defendant/Third Party Plaintiff/Appellant,

v.

ST. LOUIS UNIVERSITY MEDICAL CENTER, a Missouri Corporation, Third Party Defendant/Respondent.

No. 62051.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 21, 1994.

John R. Birkby, Clayton, for appellant.

Phillip A. Franklin, St. Louis, for plaintiffs.

William L. Davis, St. Louis, for respondent.

CRANE, Presiding Judge.

Plaintiffs decedent Sophia Poluski was a patient at St. Louis University Medical Center (the hospital) following bone graft surgery. She was to be discharged and transported by wheelchair to another institution for long term care. Defendant Richardson Transportation, a specialist in wheelchair transportation, transported her in its wheelchair from her hospital room to the other institution. Richardson's driver used a makeshift sling, rather than a wheelchair leg extender, to support Poluski's leg during transportation. As a result, the bone graft moved, necessitating further bone graft surgery.

Plaintiffs brought a negligence action against Richardson. Richardson filed a third party petition against the hospital alleging it was negligent in not stopping Richardson from using the sling in transporting Poluski. The jury returned a verdict in the amount of $175,000 for plaintiffs against Richardson. On Richardson's third party claim, the jury apportioned 20% of fault to the hospital. The hospital moved for judgment notwithstanding the verdict on the grounds that Richardson failed to make a submissible case and the verdict was contrary to law and against the weight of the evidence. The trial court granted the motion, finding that Richardson did not make a submissible case against the hospital because there was no showing that the hospital had any duty to supervise, stop or otherwise interfere with Poluski's transportation because she had already been discharged as a patient. Richardson appeals from this order. We reverse and remand for entry of judgment in accordance with the verdict.

In reviewing a trial court's grant of judgment notwithstanding the verdict, we consider only the evidence supporting the verdict, and inferences reasonably drawn therefrom. *Goodenough v. Deaconess Hosp.*, 637 S.W.2d 123, 125 (Mo.App.1982). We affirm only if there is no room for reasonable minds to differ on the issues and if the trial court's action is supported by at least one of the grounds raised in the motion. *Id.*

Viewed in the light most favorable to the verdict, the evidence reveals that on August 19, 1987 Ronald Fenster, a social worker employed by the hospital, contacted Richardson to arrange for Poluski's transfer to another institution for long term nursing care and physical therapy. Fenster gave Richardson Poluski's name, room number and destination, and arranged for her to be picked up at 10:30 a.m. on August 20, 1987. He did not inform Richardson that she was in a full leg cast or ask Richardson to bring a wheelchair with a long leg extender.

On August 20, 1987 Richardson's employee, Victor Burchett, was dispatched to transfer Poluski. Upon his arrival at the hospital, Burchett parked his van, removed the wheelchair, and went directly to Poluski's room. He testified a nurse or nurse's aid was in the room with her when he arrived. Burchett testified he spoke with either a nurse at the nurse's station or the nurse or nurse's aid in the room and asked whether Poluski was ready to be discharged and whether all the paperwork was signed out.

Burchett noticed Poluski's leg was in a cast and told her he could not take her because his wheelchair was not equipped with a leg extender. He said Poluski did not want to wait for another van to transport her and agreed to his suggestion that he support her leg with a sling. Burchett testified that he told a nurse what he wanted to do and that she gave him a sheet. He testified the nurse in the room stayed with him while he put Poluski into the wheelchair and made a sling

for her leg by placing the sheet on the bottom of the ankle, around both sides, up under her arms, around one shoulder, and tying it behind her back. Burchett knew that using a sling was not a proper way to transport a person with a full leg cast.

Burchett testified he pushed Poluski into the hallway by the nurse's station where some nurses came up and gave her a hug or shook her hand and said goodbye. Burchett then took Poluski by the elevator down to the street level.

Hospital nurse Tricia Hensley testified that a man had come up to the nurse's station and asked for a sheet for Poluski. She gave him the sheet without asking why he needed it.

Hospital nurse Elizabeth King testified that Poluski was her assigned patient on August 20, 1987. King identified the Physician's Order Sheet which bore an 8:00 a.m. entry on August 20, 1987 of "discharge to Incarnate Word for P.T." King also identified Poluski's Daily Activity Record for the date of the discharge which contained the Patient Discharge form and Nursing Transfer Plan. King testified that she prepared the Patient Discharge form before Richardson arrived because she knew Poluski would be leaving but would not have time to do that paperwork when the van arrived. However, she did not observe the discharge. There was a space at the top of the Patient Discharge form to record the time Poluski left. This time was not entered on Poluski's Patient Discharge form. King said she would have entered it if she had been there.

King testified that nurses make out the discharge form before the ambulance arrives "so they can assist the ambulance driver, if necessary, with the transportation of the patient." She further testified that it was the hospital's practice that nurses would fill out the discharge forms in advance. King testified that if she had known the driver was at the hospital to transfer the patient she would have "assisted him in getting her in a wheelchair and transferring her properly, giving her the nurse's transfer plan. . . ." King further testified that if she had seen a driver from the transportation company wrapping a sheet around the patient's foot and around her shoulder and neck and back to support the patient's leg, she would have stopped it immediately and would have charted it.

Margaret Miller, a registered nurse, testified as an expert witness for Richardson. She testified that, based upon her training and experience, a patient comes under the care of a hospital when he or she is given a hospital number and is admitted in the admitting office, and that a patient ceases to be under the care of a hospital "when they leave the premises when they are discharged." She reviewed Poluski's Patient Discharge form and testified that it reflected improper discharge procedures in that it did not show the time when Poluski was discharged.

Miller further testified to her opinions that if nursing personnel had observed Poluski in the process of being discharged in a wheelchair with a sheet being used as a sling to support her leg, they should have stopped the discharge until a proper wheelchair was obtained and, if they did not intervene, they were giving their assent to the manner of transportation.

Plaintiffs offered Poluski's deposition into evidence. Poluski testified that sometime before noon, someone called her room stating he would be up in five or ten minutes. Upon Burchett's arrival, she asked about a wheelchair with extenders but Burchett said the hospital had not told him to bring that type of chair. He obtained a sheet to make a sling and she agreed to using it because Burchett told her he was a paramedic and she believed he knew what he was doing. As she was wheeled through the hall, the head nurse, Margaret Newhouse, waved goodbye. Poluski further testified that although she knew she was to be transported to another hospital, the hospital employees did not tell her that she was discharged or give her papers to take with her to the other institution.

For its sole point on appeal, Richardson contends that it made a submissible case because the hospital's duty continued until Poluski's physical departure and there was evidence that hospital nurses observed the sling being used while Poluski was still in the hospital. Richardson contends that the trial

court erred in finding that Poluski "had already been discharged as a patient," and that the hospital had no duty to interfere with her transportation. Richardson asserts the hospital employees owed a duty of reasonable care to Poluski up to the time she departed the premises.

■ To make a submissible case, substantial evidence is required for every fact essential to liability. *Eidson v. Reproductive Health Services*, 863 S.W.2d 621, 626 (Mo. App.1993). "Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of facts can reasonably decide a case." *Id.*, quoting *Hurlock v. Park Lane Medical Center, Inc.*, 709 S.W.2d 872, 880 (Mo.App.1985). Whether evidence is substantial is a question of law. *Eidson*, 863 S.W.2d at 626.

■ In order to prove actionable negligence, a plaintiff must establish the existence of a duty on the part of the defendant to protect the plaintiff from injury, defendant's failure to perform that duty and plaintiff's injury proximately caused thereby. *Newcomb v. St. Louis Office for MR/DD*, 871 S.W.2d 71, 73 (Mo.App.1994). The existence of a duty is a question of law. *Id.* A relationship must exist between plaintiff and defendant which the law recognizes as the basis of a duty of care. *Bunker v. Ass'n of Mo. Elec. Coop.*, 839 S.W.2d 608, 611 (Mo.App. 1992).

■ If the conduct involves nonmedical, administrative, ministerial, or routine care, a hospital owes an obligation of ordinary care to its patients. *M.W. v. Jewish Hosp. Ass'n of St. Louis*, 637 S.W.2d 74, 76 (Mo.App. 1982). Under the ordinary care standard, once a hospital accepts a patient, it owes that patient a specific duty of reasonable care proportionate to the patient's needs as the patient's known condition requires to safeguard and protect that patient from injury. *Stacy v. Truman Medical Ctr.*, 836 S.W.2d 911, 922 (Mo. banc 1992); *Stallman v. Robinson*, 364 Mo. 275, 260 S.W.2d 743, 745 (1953); *Robbins v. Jewish Hosp. of St. Louis*, 663 S.W.2d 341, 346 (Mo.App.1983).

A hospital owes a duty of care to its patients, which is independent and apart from the duty of a physician, and which includes the duty of protection.

The extent and character of the care that a hospital owes its patients depends on the circumstances of each particular case. A hospital must exercise such reasonable care toward a patient as his known condition may require. A hospital is required to consider the patient's capacity to care for himself, and it has a duty to protect a patient from dangers that may result from the patient's physical and mental incapacities, as well as from external circumstances peculiarly within the hospital's control. Thus, a hospital is under a duty to exercise reasonable care to protect a patient from injuring himself, and from harm inflicted by third persons.

41 C.J.S. Hospitals § 20 (1991).

■ The hospital argues that its duty terminated because the patient had been discharged when Burchett arrived. We disagree. Although the patient had a discharge order and her discharge forms had been prepared, her formal discharge had not been completed when she was put in the sling in her hospital room. The time of discharge had not yet been entered on her Patient Discharge form. In addition, a hospital nurse testified that she had prepared the discharge forms in advance and it was hospital policy for nurses to prepare the forms in advance so that the nurse would be available to assist with the patient's discharge. Moreover, there was expert testimony that a patient is not discharged until he or she leaves the premises.

Further, there was evidence that Poluski was still under the hospital's care when Burchett put her into the wheelchair, fashioned the sling, and transported her through the hospital. King testified that a nurse's duties at the hospital during the discharge process would, if the nurse was present, include assisting the driver in putting a patient in a wheelchair and transferring the patient properly. Both King and Miller agreed that a nurse who saw the improper method of transportation on the hospital premises should have intervened. Accordingly, the hospital had a duty of reasonable care to

Poluski proportionate to her known needs until she left the premises.

■ There was evidence that hospital nursing personnel observed the use of the sling and thus knew of her condition which gave rise to a duty to stop or prevent her from being discharged in that manner. This issue was contested and there was also evidence to the contrary. However, the credibility of witnesses is for the jury. Burchett testified that hospital nursing personnel observed him putting on the sling and transporting Poluski in this condition from her room to the elevators. This testimony constitutes substantial evidence to support the submission of the hospital's negligence to the jury.

■ The hospital also argues that it had no duty because Richardson was not its employee, was an independent contractor, and was a common carrier. These arguments were not submitted to the trial court as grounds for its motion and thus are not entitled to review. Further these arguments have no merit. The hospital's liability was based on its independent duty of ordinary care to its patient as required by that patient's known condition.

The question of whether the hospital was guilty of negligence toward Poluski was for the jury. The trial court erred in granting a judgment notwithstanding the verdict.

The judgment of the trial court is reversed and the case is remanded for entry of judgment in accordance with the verdict.

KAROHL and CRAHAN, JJ., concur.