**Simonetta SHAH, et al.,**
**Plaintiffs/Appellants,**

v.

**Richard LEHMAN, M.D., et al.,**
**Defendants/Respondents.**

**No. 72033.**

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 28, 1997.

Christopher J. Quinn, St. Louis, for plaintiffs/appellants.

Thomas B. Weaver, Paul N. Venker, Mary Carol Parker, St. Louis, for defendants/respondents.

GRIMM, Presiding Judge.

This is a medical malpractice action. The trial court granted defendants' summary judgment motion on the basis that the statute of limitations barred plaintiff's[1] suit.

On appeal, plaintiff's brief contains only one point, with two issues. First, she alleges that although defendants-surgeons intentionally placed a cement restrictor into her leg, its present location constitutes a "foreign object." As such, she contends, the foreign object exception tolls the statute of limitations. Second, she alleges that several subsequent surgeries at the same hospital "by both its staff members and non-resident physicians" constitutes continuing care, which also tolled the statute. We disagree and affirm.

## I. Background

The relevant facts are undisputed. Plaintiff's hips have caused her to suffer for more than twenty years. In 1975, her left hip was replaced; her right hip was replaced in 1983. On January 8, 1985, the surgery which is the basis of this suit occurred. At that time, defendants-surgeons removed her old left hip prosthesis and replaced it with a new one. The surgeons were residents in orthopedic-surgery employed by defendant Barnes Hospital.

During that surgery, a cement restrictor was placed in the femoral canal. A cement restrictor is designed to stop the flow of cement down the femur. By using such a restrictor, a surgeon can place a large amount of cement around the stem of the hip and still prevent the flow of cement into the femoral canal. The parties stipulated that only one cement restrictor was utilized. Further, plaintiff does not contest that the surgeons intentionally placed the restrictor and it was intended to be left as a medical implant as part of the procedure.

Plaintiff remained in Barnes and under surgeons' care until February 5, 1985, when she was discharged. After that date, plaintiff did not have any further contact with surgeons.

Nine years later, in July 1994, another surgeon at Barnes performed a second left hip revision on plaintiff. In September 1994, this surgeon advised plaintiff that a cement restrictor was embedded in her left thigh muscle. Plaintiff filed her petition on January 6, 1995, alleging medical malpractice.

In her petition, plaintiff alleged that the cement restrictor was a "foreign object." Section 516.105, RSMo 1994, permits an action to be brought "within two years from the date of discovery" of a foreign object which was introduced and negligently permitted to remain within a person.

Defendants filed a summary judgment motion with affidavits. Basically, they contended that the cement restrictor was not a "foreign object" within the meaning of that statute. Further, they asserted that the continuing care exception was not applicable. Therefore, they alleged plaintiff's claim was time barred. The trial court agreed and sustained the motion.

---

**1.** Simonetta Shah and her husband are plaintiffs. However, because Mr. Shah's claim is solely for loss of consortium, and for ease of reading, we refer only to Mrs. Shah's claim.

## II. "Foreign Object"

In the first part of her point, plaintiff alleges that the trial court erred in holding her claim was barred by the statute of limitations. She contends that the location of the cement restrictor in her thigh "constitutes a 'foreign object' within the meaning of section 516.105 R.S.Mo. (1994)." Thus, she asserts, the applicable statute of limitations was tolled until the object's discovery.

Section 516.105 RSMo 1994 is the statute of limitations for medical malpractice claims. It provides:

> All actions against physicians, hospitals, ... and any other entity providing health care services and all employees of any of the foregoing ... for damages for malpractice, negligence, error or mistake related to health care shall be brought within two years from the date of occurrence of the act of neglect complained of ... except that in cases in which the act of neglect complained of is introducing and negligently permitting any foreign object to remain within the body of a living person, the action shall be brought within two years from the date of the discovery of such alleged negligence....

In construing the "foreign object" exception, the trial court relied on *Hershley v. Brown*, 655 S.W.2d 671 (Mo.App. W.D.1983). In that case, our western district colleagues reviewed a trial court's grant of a motion to dismiss. There, in December 1977, Mrs. Hershley sought a tubal ligation to become sterile. *Id.* at 674. Instead, defendant "performed the sterilization procedure by inserting a tubal ring." *Id.* In July 1981, Mrs. Hershley gave birth to a child. Suit was filed in October 1981.

The *Hershley* court held that the "foreign object" exception did not apply. *Id.* at 675–76. To come within that exception, the "petition must allege that the object was introduced and negligently permitted to remain in the body." *Id.* at 675. However, if the "foreign object is intentionally introduced in the body and is intended to remain there," even if the procedure is performed in a negligent manner, the negligence does not fall within the tolling provision. *Id.*

Here, the summary judgment facts disclose that the surgeons intentionally placed the cement restrictor into plaintiff and it was intended to be left as a medical implant as part of the procedure. Under those facts, the cement restrictor was not negligently permitted to remain in plaintiff. Thus, plaintiff's claim does not fall within the tolling provision of section 516.105.

Our conclusion is supported by *Rockefeller v. Moront*, 81 N.Y.2d 560, 601 N.Y.S.2d 86, 618 N.E.2d 119 (1993). In that case, the defendant performed hernia repair surgery on the plaintiff in 1971. Apparently, at that time, a suture was placed on his vas deferens. The location of this suture was not determined until 1989, and suit was filed in 1990. *Id.* 601 N.Y.S.2d at 87–88, 618 N.E.2d at 120–21.

"In determining whether an object which remains in the patient constitutes a 'foreign object,' the courts should consider the nature of the materials implanted in a patient, as well as their intended function." *Id.* 601 N.Y.S.2d at 88–89, 618 N.E.2d at 121–22. The court distinguished objects such as surgical clamps, scalpels, and sponges which are temporarily introduced into the patient's body. These objects are normally intended to be removed. In contrast, items which are placed in the patient with the intention that they will remain to serve some continuing purpose are not foreign objects. *Id.* 601 N.Y.S.2d at 89, 618 N.E.2d at 122. A claim based on a physician's deliberate implantation of such a device "in the wrong place does not transform it into a foreign object." *Id.* The New York court concluded that "only in circumstances where a foreign object is negligently 'left' in the patient's body without any intended continuing treatment purpose" would the discovery rule be available to toll the statute of limitations. *Id.* 601 N.Y.S.2d at 90, 618 N.E.2d at 123.

Nevertheless, plaintiff argues that the cement restrictor is a foreign object because it is presently located in her thigh, not in the femoral artery. She relies solely on *Beatman v. Gates*, 36 Ohio App.3d 114, 521 N.E.2d 521 (1987). In *Beatman*, the defendant placed an intrauterine device in the plaintiff. When the plaintiff returned for a follow up office visit, the defendant could not locate the device. *Id.* Several years later,

the device was located in her abdominal area. The trial court granted the defendant's summary judgment motion, based on the statute of limitations.

The *Beatman* court reversed. It noted that the trial court granted summary judgment based solely on the parties' pleadings and the plaintiff's answers to interrogatories. *Id.* 521 N.E.2d at 522. Further, it observed that several factual issues remained in dispute. *Id.* Therefore, it found that summary judgment was not warranted. *Id.* at 523.

*Beatman* is neither controlling nor persuasive. Here, unlike the facts in *Beatman,* no factual issues are in dispute. The parties stipulated that only one cement restrictor was utilized in the surgery and plaintiff does not contend that one should not have been used. Further, plaintiff does not contest that the cement restrictor was intended to be left in as a medical implant.

### III. Continuing Care Exception

In the second part of her point, plaintiff alleges that the "continuing care" exception tolled the statute of limitations. She contends that "a series of hip revision procedures performed at the same hospital by both its staff members and non-resident physicians over a several year period constitutes 'continuing care' by the *hospital.*" (emphasis added). Plaintiff makes no such claim against defendants-surgeons.

The exception was first recognized in Missouri in *Thatcher v. De Tar,* 351 Mo. 603, 173 S.W.2d 760 (1943). There, the plaintiff hired the defendant physician to treat an ailment. In August 1937, the defendant operated and removed the plaintiff's appendix. During that operation, the defendant permitted a needle to remain in the plaintiff's body. *Id.* 173 S.W.2d at 761. The plaintiff continued to have pain and the defendant treated him until October 1939. At that time, the plaintiff went to another physician. In September 1940, the plaintiff had another operation and learned of the needle. *Id.*

Our supreme court recognized that a number of states had adopted the rule that the limitation period does not begin to run until the treatment ceases. *Id.* at 762. It concluded that "where the facts are as disclosed in plaintiff's petition the statute of limitations does not begin to run until the treatment of the plaintiff's ailment by the defendant ceases." *Id.* at 763.

Plaintiff has not referred us to any case that has applied the "continuing care" exception to a hospital. Nor has our independent research disclosed any. Rather, plaintiff relies solely on *RCA Mutual Insurance Co. v. Sanborn,* 918 S.W.2d 893 (Mo.App. S.D.1996). In that case, RCA filed a declaratory judgment action against its insured physician and the physician's patient. In the underlying case, the physician operated on the patient in June 1988, replacing his right hip. In February 1989, when his prosthesis had loosened, the physician performed a revision surgery. The patient continued to have pain, and in August 1990, the patient underwent another revision. All operations were performed by the same physician. *Id.* at 895–96.

The *RCA* court applied the *Thatcher* rule. It held that it is the "termination of the relationship [between physician and patient] that commences the running of the statute of limitations." *Id.* at 897. It concluded that the patient was entitled to "payment of damages for a 'whole' claim," not a series of claims. *Id* at 898.

*RCA* does not aid plaintiff. First and foremost, the "continuing care" was that of a single physician, not a hospital. Further, the care was of the same right hip, with an ongoing problem, and with only a few months between each of the three surgeries.

The facts in the present case are distinguishable from those in *RCA.* Here, the surgery occurred on January 8, 1985 and plaintiff was released from the hospital on February 5, 1985. Nothing in the record indicates any contact with the hospital until more than nine years later, when plaintiff appeared for a left hip revision in July 1994. A 9-year lapse between treatments does not constitute "continuing care." Point denied.

The trial court's judgment is affirmed.

CRANDALL and GARY M. GAERTNER, JJ., concur.