William L. DUNAGAN, By and Through his Guardian and Conservator, Harriet DUNAGAN, Appellant,

v.

SHALOM GERIATRIC CENTER, Respondent.

No. WD 54675.

Missouri Court of Appeals, Western District.

April 28, 1998.

James W. Humphrey, Jr., Anna M. Inch, Kansas City, for appellant.

B.W. Jacob, Suzanna McLarney Teeven, Kansas City, for respondent.

Before ULRICH, C.J., P.J., and LOWENSTEIN and HOWARD, JJ.

ULRICH, Chief Judge, Presiding Judge.

William Dunagan,[1] by and through his Guardian and Conservator, Harriet Dunagan, appeals the partial summary judgment in favor of Shalom Geriatric Center (SGC), a nursing home facility. Mr. Dunagan sought to recover actual and punitive damages from SGC for five separate injuries he sustained while residing at the facility. SGC filed a motion for partial summary judgment asserting that the applicable statute of limitations, section 516.105[2], had run regarding three of the five injuries, and the trial court granted

---

1. Mr. Dunagan died on November 24, 1995, after the original petition was filed in this case.

2. All statutory references are to RSMo 1994 unless otherwise indicated.

the motion. The trial court entered final judgment on the three claims as provided by Rule 74.01(b). The judgment of the trial court is affirmed.

Mr. Dunagan filed his original petition on June 30, 1995, and his first amended petition on March 19, 1996. The amended petition alleged that SGC was a licensed skilled nursing facility under Chapter 198 and that Mr. Dunagan, who suffered from Alzheimer's disease, entered the facility on December 24, 1991, to receive nursing and health care. The petition further averred that Mr. Dunagan sustained five separate injuries while residing at the facility due to the facility's negligent and careless acts:

(1) April 22, 1992—fracture of left hip

(2) July 13, 1992—fracture of right hip

(3) November 14, 1992—fracture of left hip

(4) January 1995—fracture of left leg and knee

(5) September 20, 1995—fracture of left ankle

Actual and punitive damages were sought under five different legal theories: violation of the Missouri Omnibus Nursing Home Act, sections 198.003 to 198.186, negligence, negligence per se, breach of contract, and breach of fiduciary duty.

■ On appeal, Mr. Dunagan claims that the trial court erred in granting SGC's motion for partial summary judgment based on the running of the two-year statute of limitations, section 516.105. He contends that section 516.105 was not applicable because his claims were for ordinary negligence rather than for negligence related to health care. Thus, he argues that the five-year statute of limitations of section 516.120(4) applied. Mr. Dunagan also contends on appeal that the "continuing care" exception to section 516.105 tolled the statute of limitations.[3]

■ Appellate review of the grant of summary judgment is de novo. ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). The record is reviewed in the light most favorable to the party against whom judgment was entered, according that party all reasonable inferences that may be drawn from the record. Id.

■ Summary judgment will be upheld on appeal if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist. Id. at 377. Facts contained in affidavits or otherwise in support of a party's motion for summary judgment are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion. Id. at 376. A defending party may establish a right to judgment as a matter of law by showing that there is no genuine dispute as to the existence of each of the facts necessary to support the defendant's properly pleaded affirmative defense. Id. at 381.

■ Once the movant has established a right to judgment as a matter of law, the non-movant must demonstrate that one or more of the material facts asserted by the movant as not in dispute is, in fact, genuinely disputed. Id. The non-moving party may not rely on mere allegations and denials of the pleadings, but must use affidavits, depositions, answers to interrogatories, or admissions on file to demonstrate the existence of a genuine issue for trial. Id.; Reeves v. Keesler, 921 S.W.2d 16, 19 (Mo.App.1996).

■ Section 516.105 provides the period of limitation for commencing medical malpractice actions against health care providers. It reads, in pertinent part:

All actions against physicians, hospitals, dentists, registered or licensed practical nurses, optometrists, podiatrists, pharmacists, chiropractors, professional physical

---

3. As a final point on appeal, Mr. Dunagan claims that the trial court erred in disallowing evidence of prior incidents of neglect as notice to SGC of Mr. Dunagan's potential for falling. The trial court's partial summary judgment only barred Mr. Dunagan's claims related to the injuries on April 22, 1992, July 13, 1992, and November 14, 1992. The court made no findings regarding evidence of prior acts of neglect and its admissibility to show the defendant had notice of Mr. Dunagan's propensity to fall. A reviewing court will not review issues on appeal that were not expressly decided by the trial court. Waldorf Inv. Co. v. Farris, 918 S.W.2d 915, 918 (Mo.App. 1996). The alleged error, therefore, is not reviewed on appeal.

therapists, and *any other entity providing health care services* ... for damages *for malpractice, negligence, error or mistake related to health care* shall be brought within two years from the date of occurrence of the act of neglect complained of. § 516.105 (emphasis added). Mr. Dunagan's negligence claims against SGC came within the purview of section 516.105. First, SGC is an entity providing health care services. Chapter 538, which governs tort actions based on improper health care, defines health care services, for purposes of that chapter, as:

> any services that a health care provider renders to a patient in the ordinary course of the health care provider's profession or, if the heath care provider is an institution, in the ordinary course of furthering the purposes for which the institution is organized. Professional services shall include, but are not limited to, *transfer to a patient of goods or services* incidental or pursuant to the practice of the health care provider's profession or *in furtherance of the purposes for which an institutional health care provider is organized.*

§ 538.205(5), RSMo Cum.Supp.1997 (emphasis added). A health care provider is:

> any physician, hospital, health maintenance organization, ambulatory surgical center, *long-term care facility,* dentist, registered or licensed practical nurse, optometrist, podiatrist, pharmacist, chiropractor, professional physical therapist, psychologist, physician-in-training, and *any other person or entity that provides health care services under authority of a license or certificate.*

§ 538.205(4), RSMo Cum.Supp.1997 (emphasis added). Mr. Dunagan alleged and SGC admitted that SGC was a skilled nursing facility governed by the Omnibus Nursing Home Act, sections 198.003 to 198.186. A skilled nursing facility is:

> any premises, other than a residential care facility I, a residential care facility II, or an intermediate care facility, which is utilized by its owner, operator or manager to provide for twenty-four hour accommodation, board and skilled nursing care and treatment services to at least three residents.... Skilled nursing care and treat-

ment services are those services commonly performed by or under the supervision of a registered professional nurse for individuals requiring twenty-four hours a day care by licensed nursing personnel including acts of observation, care and counsel of the aged, ill, injured or infirm, the administration of medications and treatments as prescribed by a licensed physician or dentist, or other nursing functions requiring substantial specialized judgment and skill.

§ 198.006(17). A skilled nursing facility is a long-term care facility that requires a valid license issued by the Department of Social Services to operate. § 198.015. It provides twenty-four hour accommodations, board, and skilled nursing care and treatment services in furtherance of its institutional purpose. As a skilled nursing facility, SGC, therefore, is a health care provider that provides health care services under Chapter 538.

■ Secondly, Mr. Dunagan's claims were subject to the time limitations in section 516.105 because they were for negligence related to health care. Section 516.105 expresses legislative intent to make only a specified class of suits against health care providers subject to the provision's two-year statute of limitations. *Rowland v. Skaggs Co., Inc.,* 666 S.W.2d 770, 772 (Mo. banc 1984). The statute encompasses only those actions where the consumer of health services seeks damages for injuries resulting from some improper, wrongful, or careless acts or omissions on the part of a health care provider in the delivery of health care to the consumer. *Id.* at 772–773.

Mr. Dunagan alleged that SGC was negligent and careless in failing to provide for his health, welfare, and safety by allowing him to fall or by dropping him. He asserts these claims were for ordinary negligence based upon a general duty of care to prevent him from falling rather than for negligence related to his health care. Mr. Dunagan's claims against SGC, however, sought damages for injuries he sustained as a result of SGC's negligence in its delivery of health care to Mr. Dunagan. Mr. Dunagan entered SGC, a skilled nursing facility, for the purpose of receiving nursing and health care of which he was in need. A skilled nursing facility is

organized to provide skilled nursing care and treatment services as well as twenty-four hour accommodation and board. By definition, skilled nursing care and treatment services are commonly performed by or under the supervision of a registered professional nurse. They include observation, care and counsel of the aged, ill, injured or infirm; administration of medications and treatments as prescribed by a licensed physician or dentist; or other nursing functions requiring substantial specialized judgment and skill. Mr. Dunagan's claims regarding SGC's negligence and carelessness in allowing him to fall related to the health care services provided by SGC of observation and care of the aged, ill, injured or infirm. *See Arbuthnot v. DePaul Health Center*, 891 S.W.2d 564, 565 (Mo.App.1995)(where acts of negligence that occurred while a patient was alighting from a wheelchair during physical therapy were claims of negligence related to health care and were subject to medical malpractice, rather than ordinary negligence statute of limitations). The two-year statute of limitations of section 516.105, therefore, applied to Mr. Dunagan's claims.

■ Mr. Dunagan next argues that the "continuing care" exception to section 516.105 tolled the statute of limitations. He claims that the statute of limitations was tolled until such time as SGC's care and treatment of Mr. Dunagan for Alzheimer's disease ceased.

■ Under the continuing care exception, the statute does not begin to run against a plaintiff until the defendant ceases to treat the injury caused by the act of neglect. *Hill v. Klontz*, 909 S.W.2d 725, 726 (Mo.App. 1995). The exception applies only "where the treatment is continuing and of such a nature as to charge the medical man with the duty of continuing care and treatment which is essential to recovery." *Kamerick v. Dorman*, 907 S.W.2d 264, 265 (Mo.App.1995)(quoting *Thatcher v. De Tar*, 351 Mo. 603, 173 S.W.2d 760, 762 (1943)).

The continuing care exception was not applicable in this case. First, the exception has only been applied in cases where a single physician has provided the continuing treatment, not where an entity has provided continuing care. *Shah v. Lehman*, 953 S.W.2d 955, 958 (Mo.App.1997). In *Shah*, the Eastern District declined to extend the exception to cases where a hospital was alleged to have provided continuing care over a period of time. *Id.* Secondly, SGC's care and treatment of Mr. Dunagan for Alzheimer's disease did not constitute continuing care of the injuries caused by the alleged acts of neglect. Mr. Dunagan alleged that he sustained five separate fractures due to SGC's negligence and carelessness. SGC's continuing care of Mr. Dunagan for Alzheimer's disease was not continuing treatment of the injuries he sustained as a result of SGC's alleged acts of neglect. Mr. Dunagan did not allege that he received from SGC any continuing treatment of his fractures that was essential to his recovery. The continuing care exception to section 516.105, therefore, did not apply.

SGC established a right to judgment as a matter of law by showing that no genuine dispute existed as to each of the facts necessary to support its affirmative defense of the running of the statute of limitations. The trial court, therefore, properly granted SGC's motion for partial summary judgment.

The judgment of the trial court is affirmed.

All concur.