Evan W. MONTGOMERY and Judith
A. Montgomery, Appellants,

v.

SOUTH COUNTY RADIOLOGISTS,
INC. and Edward Szoko, M.D.,
et al., Respondents.

No. SC 83293.

Supreme Court of Missouri,
En Banc.

July 24, 2001.

Edward M. Roth, St. Louis, for Appellants.

Linda C. Hinshaw, Kevin F. O'Malley, Mary L. Reitz, Clayton, for Respondents.

Joanne E. Joiner, Associate Gen. Counsel, Gerald M. Sill, Senior Vice President & Gen. Counsel, Jefferson City, for Amicus Curiae Missouri Hospital Association.

Harvey M. Tettlebaum, Lowell D. Pearson, Mary S. Erickson, Jefferson City, for Amicus Curiae American College of Radiology & Missouri Radiology Society.

Jennifer J. Chapin, Lisa A. Weixelman, Kansas City, for Amicus Curiae Missouri Organization of Defense Lawyers.

Robyn G. Fox, Robert T. Haar, Monica J. Allen, St. Louis, for Amicus Curiae Washington University & St. Louis University.

BENTON, Judge.

Evan W. and Judith A. Montgomery sued Dr. Edward W. Szoko and South County Radiologists, Inc., for medical negligence and loss of consortium. The circuit court granted Szoko's motion for summary judgment and SCR's motion for partial summary judgment. The Montgomerys appeal. After opinion by the Court of Appeals, a dissenting judge transferred the case to this Court. *Mo. Const. art. V, sec. 10.* Affirmed in part, reversed in part, and remanded.

## I.

This Court reviews the record in the light most favorable to the Montgomerys (against whom judgment was entered), according them the benefit of all reasonable inferences from the record. *ITT Commercial Finance v. Mid–America Marine Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).

Evan Montgomery suffered from chronic lower back pain. To determine its cause, Montgomery's neurosurgeon referred him to St. Anthony's Medical Center for diagnostic radiological services. By contract, SCR is the sole provider of these services for St. Anthony's. SCR, however, bills the patient directly for its services.

SCR hires medical doctors who specialize in radiology. These radiologists interpret films, which are actually taken by technicians at St. Anthony's. When a patient is first referred to SCR, a patient file—or "jacket"—is created, on which an SCR radiologist records patient diagnostics and information. Each time an SCR radiologist reviews films of a patient, the

radiologist includes both the film and report in the patient's jacket.

It is not uncommon for a patient, after the initial referral, to receive additional radiological services. SCR's policy and practice is to assign radiologists on a rotating basis. When a patient receives later services, SCR's "standard of care" is that its doctors review and compare previous radiologists' reports and films.

On February 14, 1995, Dr. Szoko of SCR interpreted x-rays and a magnetic resonance imaging (MRI) of Montgomery's lumbar spine. On July 31st and November 3rd that same year, two different SCR doctors separately interpreted MRIs of Montgomery's lumbar spine. Each time, the SCR doctor on rotation reviewed the films, noted impressions on Montgomery's jacket, and prepared a findings report. The SCR radiologist on duty July 31st compared his study to Szoko's of February 14th. None of the SCR radiologists personally saw or examined Montgomery, except through viewing x-rays and MRIs. All three SCR radiologists failed to notice and diagnose the cancerous tumor on Montgomery's spine.

Two weeks after his last appointment with SCR, Montgomery consulted a radiologist not employed by SCR. This radiologist immediately detected the tumor, subsequently diagnosed as osteosarcoma.

On May 23, 1997, the Montgomerys sued, among others, SCR and its three radiologists for medical negligence. Szoko moved for summary judgment, and SCR sought partial summary judgment with respect to any allegations about the February 14th services. Both alleged that with respect to services on that date, the Montgomerys filed their lawsuit beyond the two-year statute of limitations. The circuit court ruled for Szoko and SCR, specifically noting that the "continuing care" exception did not apply. After the circuit

court's ruling, the Montgomerys dismissed—without prejudice—their claims against the remaining defendants (including the other two SCR radiologists), making a final judgment for purposes of appeal.

## II.

Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Rule 74.04(c)(3)*. Where the record contains competent materials establishing two plausible but contradictory accounts of the essential facts, a "genuine issue" of material fact exists. *ITT Commercial Finance*, 854 S.W.2d at 382. If so, summary judgment cannot be granted. *Rule 74.04(c)(3)*. This Court's review is *de novo*. *ITT Commercial Finance*, 854 S.W.2d at 376.

## III.

*Section 516.105* provides:

All actions against physicians, hospitals.... and any other entity providing health care services and all employees of any of the foregoing acting in the course and scope of their employment, for damages for malpractice, negligence, error or mistake related to health care shall be brought within two years from the date of occurrence of the act of neglect complained of....

*Section 516.105 RSMo 1994.* The Montgomerys allege that Szoko committed only one act on one specific date: the diagnostic service on February 14, 1995. The Montgomerys sued on May 23, 1997—more than two years after the date of occurrence of Szoko's act of neglect complained of. *Section 516.105* required the Montgomerys to sue Szoko within two years after February 14, 1995. Therefore, *Section 516.105* bars their claim against Szoko.

The Montgomerys invoke the continuing care exception to the statute of limitations. The statute does not begin to run against a plaintiff patient until treatment by the medical defendant ceases "where the treatment is continuing and of such nature as to charge the medical [provider] with the duty of continuing care and treatment which is essential to recovery until the relation ceases...." *Thatcher v. De Tar*, 351 Mo. 603, 173 S.W.2d 760, 762 (1943); *Weiss v. Rojanasathit*, 975 S.W.2d 113, 119 (Mo. banc 1998). This duty continues until the physician-patient relationship ends by (1) mutual consent of the parties, (2) the physician's withdrawal after reasonable notice, (3) the patient's dismissal of the physician, or (4) cessation of the necessity that gave rise to the relationship. *Weiss*, 975 S.W.2d at 119–20.

The Montgomerys assert that Szoko had a duty of continuing care to Evan. They allege that Szoko performed the initial radiological service, participated as a shareholder with other physicians in a rotating assignment system, never withdrew or was dismissed as Montgomery's physician, and provided services essential to Montgomery.

A prerequisite for the continuing care exception is that a patient is under the doctor's continuing care. *Thatcher*, 173 S.W.2d at 762; *Weiss*, 975 S.W.2d at 119. The Montgomerys' allegations are not sufficient to show that Szoko's care was "continuing." Where a physician commits an act of neglect on one specific date, and has no other contact with the patient, the statute of limitations begins to run on that date (except for the specific exceptions in section 516.105). *Shroyer v. McCarthy*, 769 S.W.2d 156, 161 (Mo.App. 1989); *Green v. Washington University Medical Center*, 761 S.W.2d 688, 689–90 (Mo.App.1988); *Laughlin v. Forgrave*, 432 S.W.2d 308, 313 (Mo. banc 1968). The circuit court properly granted summary judgment to Szoko.

## IV.

The circuit court also granted partial summary judgment to SCR on any claim related to its services on February 14, 1995. The Montgomerys allege genuine issues of material fact whether SCR had a duty of continuing care to Evan. They argue that SCR was the sole provider of radiological services for St. Anthony's, adopted the system of rotating physicians, never withdrew or was dismissed as Montgomery's provider of diagnostic services, and provided three services over nine months that were essential to Montgomery.

SCR and the amici argue at length that each interpretation of an x-ray or MRI is a discrete, intermittent service, so that the prerequisite of "continuing care" is not met. SCR and the amici reason that the relationship ends with each film interpretation, which they assert is "the necessity that gave rise to the relationship." See *Weiss*, 975 S.W.2d at 120.

This view is too narrow. The necessity that gives rise to the relationship is the patient's ailment or condition. "When the physician takes charge of a case and is employed to attend a patient, ... the relation of physician and patient continues until ended by the consent of the parties, or revoked by the dismissal of the physician, *or until his services are no longer needed.*" *Cazzell v. Schofield*, 319 Mo. 1169, 8 S.W.2d 580, 587 (1928)(emphasis added), cited in *Weiss*, 975 S.W.2d at 120.

On the summary judgment record, SCR provided continuing services to Evan Montgomery. On three occasions in a nine-month period, Montgomery made the same complaint about the same part of his body to his neurosurgeon. The neurosur-

geon ordered three tests from SCR, which provided three reports, each report comparing itself to the immediately preceding report.

SCR strenuously argues that its services—even if continuing—are not of such a nature as to charge it with a duty of continuing care and treatment. SCR believes that only the treating physician can have such a duty, while other health-care entities cannot, citing dicta in *Shah v. Lehman,* 953 S.W.2d 955, 958 (Mo.App.1997), and *Dunagan v. Shalom Geriatric Center,* 967 S.W.2d 285, 289 (Mo.App.1998). Neither *Shah* nor *Dunagan* holds that health-care entities cannot have a duty of continuing care, but rather, both found no duty on the facts in those cases. See also *Brickey v. Concerned Care of the Midwest, Inc.,* 988 S.W.2d 592, 597–98 (Mo.App.1999). By invoking section 516.105, SCR concedes that it is an "entity providing health care services." The plain language of section 516.105 does not distinguish between types of providers, but covers any "entity providing health care services."

SCR ignores that the treating physician must rely on specialists, such as radiological services: "the doctor must render [continuing care and treatment] or **must see to it that some other competent person does so** until termination of the physician-patient relationship." *Weiss,* 975 S.W.2d at 120 (emphasis added). The treating physician, thus, has a comprehensive duty of continuing care and treatment. Likewise, an entity that provides continuing radiological services has a proportionate duty of continuing care until its relation with the patient ends. See *Poluski v. Richardson Transp.,* 877 S.W.2d 709, 713 (Mo.App.1994).

In sum, SCR and the amici believe that radiologists do not have a physician-patient relationship that charges them with any duty of continuing care. They repeatedly cite *Shaw v. Clough,* 597 S.W.2d 212, 215 (Mo.App.1980):

> The doctor-patient relationship is in most instances a highly personal and close one, encompassing on the part of the patient a basic confidence and reliance upon the skills and judgment of the doctor with a reasonable expectation that such will be met by a deep sense of obligation and proper exercise by the doctor of his incomparable superior knowledge and the dedicated use of his best talents and judgment. If he is careless or negligent in his treatment of his patient, and his patient suffers injury and damage, he, like all others, whether professional or lay, can be held responsible under civil law for his actions.

SCR is an entity composed of ten medical doctors specializing in radiology. While SCR's obligations are not as comprehensive as the treating physician's, its services are of such a nature to charge it with accurately interpreting and comparing x-rays and MRIs for the same complaint by the same patient about the same part of the body, three times within a nine-month period.

The circuit court granted summary judgment on the basis that a health-care entity—even one composed of doctors—cannot have a duty of continuing care. Because SCR was not entitled to judgment as a matter of law, the partial summary judgment was inappropriate.

## V.

The judgment for Szoko is affirmed, the judgment for SCR reversed, and the case remanded for proceedings consistent with this opinion.

WHITE, WOLFF, LAURA DENVIR STITH and PRICE, JJ., and SHEFFIELD, Sp. J., concur.

LIMBAUGH, C.J., concurs in part and dissents in part in separate opinion filed.

HOLSTEIN, J., not participating.

LIMBAUGH, Chief Justice, concurring in part and dissenting in part.

The majority correctly affirms the trial court's dismissal of the claim against Dr. Szoko, but I disagree that the trial court's dismissal of the companion claim against South County Radiologists (SCR) should be reversed and the claim reinstated.

The majority rests its holding against SCR on the continuing care exception. Given the express and unequivocal language of the statute of limitations set out in section 516.105, RSMo 1994—"All actions against [health care providers] ... shall be brought within two years from the date of occurrence of the act of neglect complained of ..."—the court-made continuing care exception is a stretch, except, perhaps, where, as held in *Thatcher v. De Tar*, 351 Mo. 603, 173 S.W.2d 760, 762 (1943), the continuing care is an act of continuing negligence. Now, with no proper deference to the legislature, the majority boldly extends the exception from its conventional application to treating physicians, to an unprecedented application to diagnostic consultants engaged only to perform specific tests or examinations.

Although I have reservations about the continuing care exception in any form, I recognize that the legislature has amended the statute time and again without reference to the exception, thus tacitly approving it. As I will attempt to explain, however, extending the exception in this way is inconsistent with the rationale behind the exception, as well as the language of the statute.

The basis of the continuing care exception, as the majority correctly observes, is the existence of a duty to provide continuing care, *Thatcher*, 173 S.W.2d at 762;

*Weiss v. Rojanasathit*, 975 S.W.2d 113, 119 (Mo. banc 1998); and the majority's analysis turns on its determination of that duty. I take issue with two critical parts of that analysis.

First, the majority plays off the notion that a physician's duty continues until the physician-patient relationship ends by "cessation of the necessity that gave rise to the relationship." Though I have no objection to that statement, the majority then inaccurately defines "necessity" by stating, "The necessity that gives rise to the relationship is the patient's ailment or condition." That definition may well be appropriate for a treating physician, but not for a physician, or group of physicians, called on to perform a single diagnostic examination and who were engaged for that purpose alone under the direction of the treating physician. As Judge Crahan wrote in his dissenting opinion when the case was pending before the Court of Appeals:

> [The] argument overlooks the fact that, in the context of radiological diagnostic services, the necessity that gave rise to the relation ceases to exist when the report interpreting what is viewed on the films is transmitted to the treating physician. That is the sole reason the "relationship" was established and that purpose is accomplished when the report is rendered.

I would add to Judge Crahan's remarks that on the uncontroverted record before us, when SCR and its physicians undertook each examination, neither they, nor the treating physician, nor the patient intended that care or treatment would continue beyond the conduct of the examination ordered. Furthermore, it is undisputed that the treating physician was "calling the shots" as to whether SCR and its physicians should conduct

additional examinations, and they did not have the option, much less the duty, to continue or discontinue the series of examinations that was eventually ordered. This is not a case in which the radiologist himself or herself ordered more tests or follow-up treatment or had the authority to do so. I would hold that the "necessity" of care or treatment ended with the submission of the report from each examination.

A second part of the majority's duty analysis involves an equally tenuous jump in logic. After noting that treating physicians must often rely on specialists, the majority states: "The treating physician thus has a comprehensive duty of continuing care and treatment. Likewise, an entity that provides continuing radiological services has a proportionate duty of continuing care until its relation with the patient ends." Though I agree with the proposition that entities as well as individuals may have a duty of continuing care, it does not follow that entities providing radiological services have the same duty as entities or individuals serving in the role of a treating physician. The case cited by the majority, *Poluski v. Richardson Transp.*, 877 S.W.2d 709, 713 (Mo.App. 1994), says nothing of the sort and stands only for the agreed-on notion that both entities and individuals may be charged with a continuing duty of care. In any event, the majority's position devolves into the same "necessity that gives rise to the relationship" approach discussed above.

The difficulty with the majority's statement is compounded by the suggestion that an entity has a proportionate duty of continuing care *because* the entity provides what the majority perceives to be continuing radiological services. It seems the majority has it backwards. The duty of continuing care arises from the need for the entity in question to provide continuing care, not from the circumstance that care or treatment was in fact provided, as if a hindsight test was somehow appropriate. But here, the majority satisfies the duty requirement by reference to the fact that successive examinations were conducted, not that there was a duty of continuing care to conduct those successive examinations.

In sum, I would hold that the series of diagnostic radiological services ordered by the separate treating physician in this case did not create any continuing duty of care on the part of Dr. Szoko or SCR and that each of the services rendered was discrete and intermittent, rather than continuing. Under these circumstances, the statute of limitations ran against both Dr. Szoko and SCR, and the judgment of the trial court upholding summary judgment in favor of both defendants should be affirmed.