Sherry HOOE and Dennis
Hooe, Appellants,

v.

SAINT FRANCIS MEDICAL CENTER,
Cape Laboratory and Pathology, L.C.,
and William Stahr, M.D., Respondents.

No. SD 29279.

Missouri Court of Appeals,
Southern District,
Division One.

April 27, 2009.

Petition for Rehearing and Transfer Denied
May 18, 2009.

Application for Transfer Denied
June 30, 2009.

Kevin J. Davidson and David M. Zevan, The Zevan and Davidson Law Firm, St. Louis, for Appellants.

Jonathan Ries, David Z. Hoffman, and Jon W. Jordan, Sandberg, Phoenix & Von Gontard, P.C., St. Louis, for Respondents.

DANIEL E. SCOTT, Presiding Judge.

Sherry Hooe ("Plaintiff") [1] filed a 2004 medical malpractice action, alleging that she had been the victim of negligence seven years earlier. Defendants Cape Laboratory and Dr. Stahr sought summary judgment, citing § 516.105's two-year statute of limitations.[2] The trial court agreed and ultimately dismissed "[t]his cause . . . with prejudice." We review that ruling de novo. *Montgomery v. South County Radiologists, Inc.*, 49 S.W.3d 191, 193 (Mo. banc 2001).

### Facts and Background

In March 1997, Plaintiff had surgery for a spot on her lung. Her pulmonologist asked the surgeon to send tissue samples to Cape Laboratory, where Dr. Stahr examined them. In April 1997, Dr. Stahr

---

1. Her husband's loss of consortium claim was added later by amended petition. His claim is derivative and depends on the validity of the primary claim. *See Kamerick v. Dorman,* 907 S.W.2d 264, 267 (Mo.App.1995). Our opinion thus focuses on Ms. Hooe's claim, and for convenience and clarity, refers to her as "Plaintiff."

2. Statutory citations are to RSMo (2000 & Supp.2005).

sent his report to the pulmonologist, who told Plaintiff that the lesion was removed and was unlikely to reoccur.

Plaintiff alleges that Dr. Stahr misdiagnosed her in April 1997, and "she discovered the malpractice in November, 2003" when another pathologist's report indicated "advanced mycobacterial disease that was misdiagnosed in the 1997 pathology report." In 2004, she sued Dr. Stahr, Cape Laboratory, and St. Francis.[3]

### Continuing Care Analysis

 Subject to statutory exceptions inapplicable here, § 516.105 requires medical malpractice cases to be brought "within two years from the date of occurrence of the act of neglect complained of." However, a common-law exception tolls the statute if, and so long as, the medical defendant is providing "continuing care and treatment" essential to recovery. *See Montgomery*, 49 S.W.3d at 194 (quoting *Thatcher v. De Tar*, 351 Mo. 603, 173 S.W.2d 760, 762 (1943); *Weiss v. Rojanasathit*, 975 S.W.2d 113, 119 (Mo. banc 1998)).

Although Plaintiff claims this continuing care exception saves her case, Dr. Stahr provided her no care, treatment, or other service from April 1997 until the fall of 2003.[4] In the face of this six-year gap, Plaintiff argues that our courts have not "posited a maximal temporal interval" for the continuing care exception. But what we found, in cases where continuing care tolled the statute, were plaintiffs returning to medical defendants within two years of alleged malpractice.[5] This fits our supreme court's admonition in *Montgomery*:

> A prerequisite for the continuing care exception is that a patient is under the doctor's continuing care.... Where a physician commits an act of neglect on one specific date, and has no other contact with the patient, the statute of limitations begins to run on that date (except for the specific exceptions in section 516.105).

49 S.W.3d at 194 (citations omitted).

If we follow *Montgomery*'s teaching, we find Plaintiff alleging an April 1997 act of neglect by Dr. Stahr and, vicariously, Cape Laboratory. These defendants had no other contact with Plaintiff for over two years, and § 516.105's specific exceptions do not apply. Thus, the statute of limitations began to run in April 1997 and expired in April 1999, long before Plaintiff filed suit. Plaintiff's claims against Dr. Stahr and Cape Laboratory are time-barred, as is her husband's derivative

---

**3.** She later joined additional defendants. Those claims and their disposition are not at issue.

**4.** Plaintiff asked Dr. Stahr to send the 1997 slides to other medical facilities in the fall of 2003. Dr. Stahr talked with Plaintiff before and after doing so, and took another look at the slides himself. Our ruling makes it unnecessary to decide if this constituted care or treatment. Not all physician-patient communications "rise to the level of medical care, services or treatment." *See Kamerick*, 907 S.W.2d at 266.

**5.** *See Montgomery*, 49 S.W.3d at 193 (clinic interpreted patient's additional MRIs 5 months later); *Thatcher*, 173 S.W.2d at 761 (patient's post-operative care continued more than 2 years); *Cole v. Ferrell–Duncan Clinic*, 185 S.W.3d 740, 742 (Mo.App.2006)(patient saw physician 11 months later); *Reynolds v. Dennison*, 981 S.W.2d 641, 642–43 (Mo.App.1998)(patient saw physician 7 months later); *Adams v. Lowe*, 949 S.W.2d 109, 110 (Mo.App.1997)(patient saw dentist 7 months later); *RCA Mut. Ins. Co. v. Sanborn*, 918 S.W.2d 893, 895–96 (Mo.App.1996) (patient had second surgery 8 months later); *Ventimiglia v. Cutter Laboratories*, 708 S.W.2d 772, 774–75 (Mo.App.1986)(care allegedly continued more than 2 years).

claim.[6] The trial court properly so ruled, but erred in dismissing the "cause" in total, absent a motion and showing to justify disposition of the claims against St. Francis.

### Conclusion

The judgment is affirmed insofar as it dismisses the claims against Dr. Stahr and Cape Laboratory. In all other respects, the judgment is reversed and the case is remanded for further proceedings.

BARNEY and BATES, JJ., concur.

---

**6.** See *Kamerick*, 907 S.W.2d at 267.