**Ann WEISS, Appellant,**

v.

**Dr. Chinda ROJANASATHIT, Respondent.**

No. 80304.

Supreme Court of Missouri, En Banc.

Aug. 25, 1998.

---

5. Section 621.050.2.

Matthew J. Padberg, James P. Leonard, St. Louis, for appellant.

J. Thaddeus Eckenrode, St. Louis, for respondent.

PRICE, Judge.

This is a medical malpractice action brought by Ann Weiss against Chinda Rojanasathit, M.D. The trial court granted summary judgment in favor of Dr. Rojanasathit on the ground that the action was barred by section 516.105, RSMo 1994. The court of appeals affirmed, then transferred the case to this Court, finding the case to be one of general interest and importance. The judgment is affirmed.

## I.

On April 10, 1991, Dr. Rojanasathit performed a routine gynecological examination on Ms. Weiss. Results of the clinical examination were normal. Because Dr. Rojanasathit did not have the equipment to interpret the Pap smear, she sent it to an independent laboratory for analysis. Dr. Rojanasathit informed Ms. Weiss that she would not be contacted if the results of the Pap smear were within normal limits. Ms. Weiss was also instructed to return to Dr. Rojanasathit's office in three months. Sometime after April 22, 1991, the results of the Pap smear were sent to the doctor's office. The results were abnormal, indicating either a cancerous or a pre-cancerous condition.

Under routine office procedure, the office staff reviews the lab results. If the results are abnormal, they are given to Dr. Rojanasathit for review. Dr. Rojanasathit then contacts the patient. In the present case, Doctor Rojanasathit did not contact Ms. Weiss regarding the Pap smear results. Nor did Ms. Weiss return to Dr. Rojanasathit's office in three months or contact Dr. Rojanasathit again except to request her medical records late in 1995 or early in 1996.

On February 23, 1995, Dr. Raul Perez, performed another gynecological examination on Ms. Weiss. Pap smear results revealed that Ms. Weiss had developed Stage IIb cancer of the endocervix.

On March 6, 1996, Ms. Weiss filed an action for medical malpractice against Dr. Rojanasathit. The petition alleges that Dr. Rojanasathit failed to inform Ms. Weiss of the abnormal Pap smear results, failed to perform further diagnostic testing following the abnormal Pap smear, failed to treat Ms. Weiss's condition, and failed to refer Ms. Weiss to an appropriate specialist. The trial court sustained Dr. Rojanasathit's motion for summary judgment on the ground that the action was barred by the two-year statute of limitations set out in section 516.105, RSMo 1994.

## II.

The question of law before this Court is whether section 516.105 bars Ms. Weiss's medical malpractice action. Section 516.105 provides in pertinent part:

> All actions against physicians ... for damages for malpractice, negligence, error or mistake related to health care shall be brought within two years *from the date of occurrence of the act of neglect complained of,* except that a minor under the full age of ten years shall have until his twelfth birthday to bring action, and except that in cases in which the act of neglect complained of its [sic] introducing and negligently permitting any foreign object to remain within the body of a living person, the action shall be brought within two years from the date of the discovery of such alleged negligence, or from the date on which the patient in the exercise of ordinary care should have discovered such alleged negligence, whichever date first occurs, but in no event shall any action for damages for malpractice, error, or mistake be commenced after the expiration of ten

years from the date of the act of neglect complained of. (Emphasis added).

To place Ms. Weiss's appeal in context, a review of the history of section 516.105 is helpful. Prior to 1976, the medical malpractice limitation statute was section 516.140, RSMo 1969 (original version enacted in 1921 as section 1319a). Section 516.140 provided that medical malpractice actions must be brought within two years from the date of the "act of neglect complained of." Section 516.140, RSMo 1969.

In 1968, in *Laughlin v. Forgrave*, 432 S.W.2d 308 (Mo. banc 1968), this Court strictly interpreted section 516.140. The plaintiff brought a medical malpractice action in 1963 claiming damages for a negligent act – leaving a foreign object in the patient's back during surgery – that occurred in 1951. Acknowledging that the injury caused by the surgery was not, and could not have been, discovered until 1962, this Court held nevertheless that the statute of limitations commenced to run from the date of the act of neglect, not from the time of discovery of the act of neglect. In rejecting the argument that this Court should adopt a discovery rule, this Court noted:

> This argument is appealing and has some force, so far as justice is concerned; in that respect the conclusion we reach is distasteful to us. But, the legislative branch of the government has determined the policy of the state and clearly fixed the time when the limitation period begins to run against actions for malpractice. This argument addressed to the court properly should be addressed to the General Assembly. Our function is to interpret the law; it is not to disregard the law as written by the General Assembly. *Id.* at 314.

In 1976, the legislature repealed section 516.140 and enacted the present medical malpractice limitations statute, section 516.105. Section 516.105 provides that in cases such as *Laughlin*, in which the act of neglect complained of is introducing and negligently permitting any foreign object to remain within the body of a living person, the statute commences to run from the date of discovery. Section 516.105. For all other cases, however, section 516.105 contains language almost identical to its predecessor, section 516.140. Medical malpractice actions must "be brought within two years from the date of the occurrence of the act of neglect complained of." Section 516.105. *See Miller v. Duhart*, 637 S.W.2d 183, 188 (Mo.App.1982) (finding that section 516.105 barred an action for wrongful birth of a child born after allegedly negligent performance of a bilateral tubal ligation because action was not brought within two years from the date of the sterilization operation); *see also Green v. Washington Univ. Med.Ctr.*, 761 S.W.2d 688, 690 (Mo.App.1988) (finding that section 516.105 barred a claim for failure to diagnose a condition that existed at the time of the physical examination because it was not brought within two years of the examination). Section 516.105, including the "foreign object" exception, has survived equal protection, due process, right of privacy and special law challenges. *Ross v. Kansas City Gen. Hosp. and Med. Ctr.*, 608 S.W.2d 397, 398–99 (Mo. banc 1980). In an attempt to circumvent the bar of section 516.105, Ms. Weiss puts forth four arguments.

## III.

Ms. Weiss first maintains that the language of section 516.105 stating that "all actions ... for damages for malpractice ... shall be brought within two years from the date of occurrence of the act of neglect complained of" requires not only that the negligent act occur before the statute commences running, but also that damages must have been sustained. She contends that because she had no "damages" until March of 1994 when the pre-cancerous condition allegedly developed into a cancerous condition, the statute of limitations began to run in March of 1994.

Ms. Weiss reads "damages" in section 516.105 in a vacuum, in disregard of the remainder of the phrase in which the word "damages" is used. The statute provides, "[A]ll actions... for damages... shall be brought within two years from the date of occurrence of the act of neglect complained of ..." Section 516.105; *see Laughlin*, 432 S.W.2d at 310 (in a foreign object case construing the previous medical malpractice

statute of limitations, section 516.140, the Court rejected the plaintiff's assertion that the statute was tolled until the damage resulting from the act of neglect was discoverable); *see also Green,* 761 S.W.2d at 688–689 (rejecting plaintiff's assertion that no ascertainable damage, and therefore no cause of action accrued until there was a clinical manifestation of damage from the failure to diagnose plaintiff's condition); *Sanders v. H. Nouri, M.D., Inc.,* 688 S.W.2d 24, 26 (Mo. App.1985) (finding that section 516.105 barred claim for wrongful conception because the limitations period began to run on the date of the failed sterilization procedure, not the date on which the child was conceived, or the date on which the pregnancy was discovered). Plainly stated, Ms. Weiss has an action for damages resulting from medical malpractice. Section 516.105 requires that the action "be brought within two years from the date of occurrence of the act of neglect complained of." *Id.* The word "damages" specifies the type of action subject to the time limitation in section 516.105; it does not alter the plain and unequivocal limitation in the statute that such actions be brought within two years from the date of the act of neglect.

Ms. Weiss cites in support of her theory only one Missouri medical malpractice case, *Maddox v. Truman Med. Ctr., Inc.,* 727 S.W.2d 152 (Mo.App.1987). In *Maddox,* the court of appeals found that the statute of limitations did not begin to run when the doctor misdiagnosed plaintiff's tissue as cancerous, but ran from the time of the unnecessary surgery performed as a result of the misdiagnosis. *Id.* at 153. The *Maddox* court, however, did not determine that damages were necessary before the statute of limitations would commence to run. Rather, the court examined the plaintiff's petition to determine whether the act of neglect complained of in the petition was for unnecessary surgery or the misdiagnosis of cancerous tissue. *Id.* If *Maddox* is read to say that the statute of limitations does not commence until damages are discovered, it disregards the plain language of section 516.105. *Maddox* cannot be followed as authority for engrafting an exception to section 516.105.

Ms. Weiss also relies upon cases from other jurisdictions. These cases, however, construe language dissimilar to the language of section 516.105.[1] The pertinent statutes in other jurisdictions provide either that the statute runs for a period of time from the date that the "cause of action accrues" or that the statute runs for a specified number of years after the "occurrence of the injury." Such language can be construed to hold that a cause of action does not "accrue" until the fact of injury or damage becomes objectively ascertainable. *See e.g. Werner v. American–Edwards Lab.,* 113 Idaho 434, 745 P.2d 1055, 1059 (1987).[2] The Missouri General Assembly has not provided this Court with equivalent ability.

## IV.

Ms. Weiss next contends that section 516.105 does not bar her action because Dr.

---

1. *Werner v. American–Edwards Lab.,* 113 Idaho 434, 745 P.2d 1055 (1987) (construing statute stating "the cause of action shall be deemed to have accrued as of the time of the occurrence, act or omission complained of" and holding that "a cause of action does not accrue until the fact of injury becomes objectively ascertainable."); *Blake v. Cruz,* 108 Idaho 253, 698 P.2d 315 (1984) (same); *DeBoer v. Brown,* 138 Ariz. 168, 673 P.2d 912 (1983) (construing statute stating "a cause of action for medical malpractice against a licensed health care provider accrues as of the date of injury..."); *Olson v. St. Croix Valley Memorial Hosp., Inc.,* 55 Wis.2d 628, 201 N.W.2d 63 (1972) (construing statute stating that "actions must be commenced within the periods respectively hereinafter prescribed after the cause of action has accrued..."); *Estate of Makos v. Wisconsin Masons Health Care Fund,* 211 Wis.2d 41, 564 N.W.2d 662 (1997) (passing on the constitutionality of statute stating that an action shall be commenced within one year from the date the injury is discovered but may not be commenced more than five years from the date of the act or omission); *Repp v. Hahn,* 45 Or. App. 671, 609 P.2d 398 (1980) (wrongful death action construing statute stating that action must be filed "within three years after the occurrence of the injury causing the death of the decedent"); *Peterson v. St. Cloud Hosp.,* 460 N.W.2d 635 (Minn.Ct.App.1990) (construing statute stating that a medical malpractice action is barred if it is not commenced within two years of the date on which the cause of action accrues);

2. *But see Humphreys v. Roche Biomed. Lab., Inc.,* 990 F.2d 1078 (8th Cir. 1993) (federal case upholding Arkansas's rejection of the discovery rule or a continuing tort theory that would have extended the statute of limitations in a factually similar case alleging misreading of a Pap smear).

Rojanasathit's failure to communicate the abnormal Pap smear results was an "act of neglect" that continued until Ms. Weiss's condition allegedly developed into a cancerous condition in March of 1994 or, possibly, until the Pap smear lab report was actually obtained by Ms. Weiss or Dr. Raul Perez in 1996. Her argument is grounded in a continuing tort theory.

## A.

■ This Court first adopted the "continuing or repeated wrong rule" in a case interpreting section 516.100, the general statute of limitations. *See Davis v. Laclede Gas Co.*, 603 S.W.2d 554, 556 (Mo. banc 1980). The language of section 516.100 differs significantly from section 516.105. Section 516.100 provides that a contract or tort cause of action "shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment...." *Section 516.100*. Section 516.100 further provides that "if more than one item of damage" is sustained, the cause of action does not accrue until the last item of damage is sustained and capable of ascertainment. *Id.* Under section 516.100, if "the wrong may be said to continue from day to day, and to create a fresh injury from day to day, and the wrong is capable of being terminated, a right of action exists for the damages suffered, day to day, within the statutory period immediately preceding suit." *Davis*, at 556. Under this rule, "each continuation or repetition of the wrongful conduct may be regarded as a separate cause of action for which suit must be brought within the period beginning with the occurrence." *Vogel v. A.G. Edwards & Sons, Inc.*, 801 S.W.2d 746, 755 (Mo.App.1990) (construing section 516.100 in a case alleging churning, or excessive trading by a broker, and finding that even if cause of action for churning accrued more than five years before plaintiffs' petition was filed, plaintiffs would still be entitled to damages they sustained from subsequent trades occurring within the five years immediately preceding the date the petition was filed). Examples of cases where the doctrine has been applied include maintenance of a nuisance or continuing trespass cases. *See e.g. Cacioppo v. Southwestern Bell Tel. Co.*, 550 S.W.2d 919 (Mo.App. 1977).

■ The continuing tort theory has not been adopted in cases applying section 516.105. The theory adopted in cases like *Davis* provides that the tort "continues" under section 516.100 because new or subsequent injuries or damages from the underlying tort develop, and under section 516.100, the ascertainment of the damage resulting from the wrong commences the running of the limitations period. *Davis*, 603 S.W.2d at 556. Under section 516.105, however, the statute commences to run upon the "occurrence of the act of neglect," not upon the ascertainment of the damage resulting from the wrong. Because continuing or subsequently developing damages or injuries do not start the running of section 516.105 anew, the continuing tort theory as stated in *Davis* does not apply to medical malpractice cases. The plain language of section 516.105 mandates that the action be brought "within two years from the date of occurrence of the act of neglect complained of." *Id.; see Green*, 761 S.W.2d at 690 (where a physician failed to diagnose a patient's condition, the statute ran from the time of the examination by the physician).

## B.

■ Although the continuing tort theory has not been adopted in medical malpractice cases construing section 516.105, Missouri courts have recognized that the statute of limitations does not commence to run against a plaintiff patient until treatment by the medical defendant ceases. *Thatcher v. De Tar*, 351 Mo. 603, 608, 173 S.W.2d 760, 762 (1943). This is sometimes referred to as the continuing treatment theory and applies "where the treatment is continuing and of such nature as to charge the medical man with the duty of continuing care and treatment which is essential to recovery until the relation ceases." *Id.* The duty to attend the patient continues so long as required unless the physician-patient relationship is ended by (1) the mutual consent of the parties, (2) the physician's withdrawal after reasonable no-

tice, (3) the dismissal of the physician by the patient, or (4) the cessation of the necessity that gave rise to the relationship. *Reed v. Laughlin,* 332 Mo. 424, 58 S.W.2d 440, 442 (1933); *Cazzell v. Schofield,* 319 Mo. 1169, 8 S.W.2d 580, 587 (1928). Absent good cause to the contrary, where the doctor knows or should know that a condition exists that requires further medical attention to prevent injurious consequences, the doctor must render such attention or must see to it that some other competent person does so until termination of the physician-patient relationship. *Reed; Bateman v. Rosenberg,* 525 S.W.2d 753, 756 (Mo.App.1975).

It could be argued from the record before us that Dr. Rojanasathit assumed a duty to report to plaintiff the results of her Pap smear and that until that duty was completed treatment "continued" and the statute of limitations did not begin to run. Alternatively, it could be argued that Dr. Rojanasathit's act of negligence was complete at the expiration of a reasonable time during which Ms. Weiss should have been contacted. We do not need to resolve this question of how to interpret the record because even adoption of the continuing treatment reading would not save plaintiff's case. Dr. Rojanasathit instructed Ms. Weiss to return to her office in three months. Ms. Weiss failed to return at that time or at any reasonable time thereafter. The failure of Ms. Weiss to comply with the doctor's instruction and to return for continued treatment terminated the physician/patient relationship between the two and started the running of the statute within a reasonable time after July of 1991, and certainly long before March of 1994.

■ We acknowledge that the unverified response filed by Ms. Weiss's attorney to Dr. Rojanasathit's motion for summary judgment stated that "Plaintiff expressly denies ..." that she was instructed to return for a follow-up visit. This mere denial, however, is insufficient to rebut the defendant's evidence in this regard. In support of her motion for summary judgment, Dr. Rojanasathit submitted her affidavit which stated that "The patient was advised to return for a follow-up visit." Also submitted were her office notes which indicated in the "Return Visit" space

"3m". Finally, in her deposition testimony, Dr. Rojanasathit stated that the "3m" indicated "Return visit three month."

■ A party may not rest on a mere denial in a pleading to defeat a motion for summary judgment. As was stated in *Tri–State Osteopathic Hosp. v. Blakeley,* 848 S.W.2d 571, 573 (Mo.App.1993):

> The general rule is that a party, opposing a motion for summary judgment supported by affidavit or as otherwise provided in Rule 74.04, may not rely upon mere allegations or denials of his pleading, but must set forth, by affidavit or otherwise, specific facts showing a genuine issue for trial. Rule 74.04(e); *Wood & Huston Bank v. Malan,* 815 S.W.2d 454, 457 (Mo. App.1991). If the opposing party files no verified denials, facts stated in affidavits and exhibits filed in support of a motion for summary judgment are admitted. *Cherry v. City of Hayti Heights,* 563 S.W.2d 72, 75 (Mo. banc 1978). (Footnotes omitted.)

*Klein v. Boatmen's National Bank,* 851 S.W.2d 116, 117 (Mo.App.1993); *Missouri Ins. Guar. Ass'n v. Wal–Mart,* 811 S.W.2d 28, 34 (Mo.App.1991).

**V.**

■ Ms. Weiss next argues that principles of equitable estoppel should apply to prevent Dr. Rojanasathit from invoking the statute of limitations as an affirmative defense. The purpose of the doctrine of equitable estoppel is to prevent a party from taking inequitable advantage of a situation he or she has caused. *McCrary v. Truman Med. Ctr.,* 916 S.W.2d 831, 833 (Mo.App.1995). A party is estopped to plead the statute of limitations only if that party made positive efforts to avoid the bringing of the suit against her or misled the claimants. *Dixon v. Shafton,* 649 S.W.2d 435, 439 (Mo. banc 1983). To apply the doctrine of equitable estoppel to bar Dr. Rojanasathit's statute of limitations defense, Dr. Rojanasathit must have affirmatively acted to induce Ms. Weiss to delay bringing the action. *Sugent v. Arnold's Estate,* 340 Mo. 603, 609, 101 S.W.2d 715, 718 (1937). There is no showing that Dr. Rojanasathit acted affirmatively to induce Ms. Weiss to delay

filing her lawsuit. Although Dr. Rojanasath-it's failure to notify was a negligent act of omission, it cannot be transformed into an affirmative act to induce Ms. Weiss to delay bringing suit.

## VI.

 Ms. Weiss finally asserts that section 516.105 is unconstitutional as applied in that it violates article I, sections 10 and 14 of the Missouri Constitution that guarantee, respectively, rights of due process and access to the courts. Because the claim was not presented to the trial court, it is not preserved. "Constitutional issues are waived unless raised at the earliest possible opportunity consistent with orderly procedure." *Hollis v. Blevins,* 926 S.W.2d 683 (Mo. banc 1996). Furthermore, the due process claim has been addressed previously and rejected. *Ross,* 608 S.W.2d at 398.

## VII.

 To summarize, this Court is constrained by the language of section 516.105 from adopting any of the discovery theories urged by Ms. Weiss. The general assembly evidenced its clear intent to limit a discovery rule to cases concerning foreign objects. That is its prerogative. This Court must follow the policy determination expressed there. We are free, however, again to express the concern set out in *Laughlin v. Forgrave* :

> This argument is appealing and has some force, so far as justice is concerned; in that respect the conclusion we reach is distasteful to us. But, the legislative branch of the government has determined the policy of the state and clearly fixed the time when the limitation period begins to run against actions for malpractice. This argument addressed to the court properly should be addressed to the General Assembly. Our function is to interpret the law; it is not to disregard the law as written by the General Assembly. *Id.* at 314.

The judgment is affirmed.

BENTON, C.J., LIMBAUGH, COVINGTON, WHITE and HOLSTEIN, JJ., concur.

WOLFF, J., not participating because not a member of the Court when the cause was submitted.