Bradley A. NORMAN, Appellant,

v.

Richard C. LEHMAN, M.D., Respondent.

No. ED 95661.

Missouri Court of Appeals, Eastern District, Division Three.

July 26, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 15, 2011.

John T. Papa, Granity City, IL, for appellant.

Kevin F. O'Malley, St. Louis, MO, for respondent.

CLIFFORD H. AHRENS, Judge.

Bradley Norman appeals from the trial court's summary judgment in favor of Dr. Richard Lehman finding that Norman's claim was filed outside the two-year statute of limitations for medical malpractice. Norman asserts that the trial court erred because there are contested facts as to how long he was under Dr. Lehman's care and thus whether the "continuing care" exception tolled the statute of limitations. We reverse and remand.

Dr. Lehman performed surgery on Norman's left knee on September 22, 2006. Norman had problems after the surgery, so Dr. Lehman performed another surgery on October 16. Norman's problems continued, and he returned to Dr. Lehman again on November 7. On that date, Dr. Lehman performed a physical examination and discussed future treatment options, stating in his notes that these options included "bringing him back in the hospital to re-block him" and that "[w]e need to work on his extension and work harder in therapy." Dr. Lehman recommended using an "extension" cast and "bumping up his pain medication[,]" noting that it might be necessary "to re-extension cast him periodically to maintain his extension."

Three days later, on November 10, someone contacted the office of Dr. Craig Beyer, an orthopedic surgeon, about Norman's post-operative problems. Dr. Beyer would later explain that Norman "had a family member that was in the office who approached me and gave me the basic details as to what was going on" and that "[Norman] was interested in evaluation." Office notes made that day stated "L-knee MRI and x-rays in office no PCP," meaning that Dr. Beyer wanted to do a MRI exam of Norman, with new x-rays. Dr. Beyer explained that, "typically, to expedite patient care, I will preorder any pertinent information." He also ordered some "basic blood work" to look for infection because of Norman's post-operative issues. It was common for his office to "preemptively" order tests so that he would have

all necessary information to reach a conclusion once he saw the patient.

Dr. Beyer examined Norman for the first time on November 14. His notes indicated that he considered Norman's left knee to be in a poor condition, observing that "[c]learly the ACL that he has had done cannot be salvaged.... Ultimately this is an extraordinarily difficult situation." Notes further indicate that Dr. Beyer and Norman discussed treatment options, including surgery and its risks and the expected outcome and potential complications, and that Norman was "ready to proceed."

Norman filed a medical malpractice action against Dr. Lehman on November 12, 2008. Importantly, the suit was filed two years and five days after Norman's last visit with Dr. Lehman (i.e., November 7, 2006, when Dr. Lehman recommended further treatment) and within two years of his first visit with Dr. Beyer (i.e., November 14, 2006). Dr. Lehman filed a motion for summary judgment raising the two-year statute of limitations as an affirmative defense. The trial court initially denied this motion, finding that the statute of limitations under section 516.105 RSMo 2000 was tolled under the "continuing care" exception. Specifically, the court found that Dr. Lehman's conduct on November 7 "demonstrates he was continuing his care of [Norman] at that time," and that "the record contains no evidence that the doctor-patient relationship ended between the parties on or about November 7, 2006" The court concluded that the "continuing care" exception applied, at least for purposes of summary judgment, and therefore Norman's petition of November 12, 2008, was within the statute of limitations.

Thereafter, Dr. Lehman filed another motion for summary judgment premised on the discovery of evidence of contact with Dr. Beyer on November 10, 2006. This second motion asserted the following facts. Norman last received medical treatment from Dr. Lehman on November 7, after which Norman did not return or request any additional medical treatment or advice from Dr. Lehman or his staff. Norman contacted Dr. Beyer on November 10, and neither Dr. Lehman nor Norman's primary care physician referred Norman to Dr. Beyer. Thus, Norman took affirmative steps on November 10 to establish a relationship with Dr. Beyer to get additional medical treatment for his left knee. Based on information obtained from Norman on that date, Dr. Beyer ordered blood work, an MRI, and x-rays. Dr. Beyer testified that he considered himself to be Norman's treating orthopedic surgeon and thus formed a physician-patient relationship with Norman as of November 10. Relying on the foregoing facts, Dr. Lehman argued that his alleged negligence, his last examination of Norman, and Norman's physician-patient relationship with Dr. Beyer all occurred more than two years before Norman filed suit on November 12, 2008, and therefore the statute of limitations barred Norman's claim.

In response, Norman denied many of the foregoing, supposedly uncontested facts. He denied that his last treatment by Dr. Lehman was on November 7, 2006, because Dr. Lehman discussed ongoing and future treatments and prescribed "bumping up his pain medicine" past that date. Norman denied that *he* contacted Dr. Beyer or took affirmative steps to establish a patient-physician relationship with Dr. Beyer on November 10. Dr. Beyer did not recall who contacted him and could not confirm that person's authority to represent Norman. Dr. Beyer testified that the "unknown person" indicated that Norman wanted "an evaluation, not treatment." Dr. Beyer did not speak with Norman or charge him for services until November 14. Norman saw Dr. Beyer on November 14 to get a second opinion

on Dr. Lehman's recommendations of November 7. Norman denied that Dr. Beyer ordered blood work, an MRI, and x-rays based on information obtained from him or anyone authorized by him on November 10 and further denied that a physician-patient relationship with Dr. Beyer was established that day. Norman asserted that he and Dr. Beyer were not in a doctor-patient relationship until "at earliest November 14, 2006[,]" and Dr. Lehman remained Norman's treating physician until "sometime following November 14, 2006."

After oral argument, the trial court granted Dr. Lehman's second motion for summary judgment, this time finding that "the physician-patient relationship between [Dr. Lehman] and [Norman] ended on November 7, 2006," and therefore, the statute of limitations began to run on that date. In a footnote, the court added that, in the alternative, a finding could be made that the physician-patient relationship between Dr. Lehman and Norman ended on November 10 "when [Norman] established a physician-patient relationship with Dr. Beyer." Either way, the court concluded, Norman's lawsuit, filed November 12, 2008, was outside the statute of limitations. Norman now appeals from this judgment, asserting that the trial court erred because the record did not show that Norman terminated his physician-patient relationship with Dr. Lehman prior to his initial visit with Dr. Beyer on November 14, 2006; therefore, the "continuing care" exception applies, and his suit was timely.

■ Our review of the grant of a motion for summary judgment is essentially *de novo*. *ITT Commercial Finance v. Mid–America Marine Supply Corporation*, 854 S.W.2d 371, 376 (Mo. banc 1993). We review "the record in the light most favorable to the party against whom judgment was entered[,]" and accord that party the benefit of all reasonable inferences that may be drawn from the record. *Id.* Facts

set forth by affidavit or otherwise in support of a party's motion for summary judgment are taken as true unless contradicted by the non-movant's response to the motion. *Id.* Summary judgment is proper only where the movant has demonstrated that " 'there is no genuine dispute as to the facts' " and that " 'the facts as admitted show a legal right to judgment for the movant.' " *Moore Automotive Group, Inc. v. Goffstein*, 301 S.W.3d 49, 52 (Mo. banc 2009) (quoting *ITT Commercial Finance* 854 S.W.2d at 380). It is the movant's burden to establish both a legal right to judgment and the absence of any genuine issue of material fact necessary to support the claimed right to judgment. *Id.* Whether the statute of limitations applies to an action is a question of law that we review *de novo*. *Drury v. Missouri Youth Soccer Ass'n, Inc.*, 259 S.W.3d 558, 576 (Mo.App. 2008). However, when different conclusions may be drawn from the evidence as to whether the statute of limitations has run, it is a question of fact for the jury to decide. *Id.*

■ Missouri courts have long recognized that the statute of limitations does not begin to run against a plaintiff-patient until treatment by the medical defendant ceases.

The duty to attend the patient continues so long as required unless the physician-patient relationship is ended by (1) the mutual consent of the parties, (2) the physician's withdrawal after reasonable notice, (3) the dismissal of the physician by the patient, or (4) the cessation of the necessity that gave rise to the relationship. Absent good cause to the contrary, where the doctor knows or should know that a condition exists that requires further medical attention to prevent injurious consequences, the doctor must render such attention or must see to it that some other competent person

does so until the termination of the physician-patient relationship.

*Weiss v. Rojanasathit,* 975 S.W.2d 113, 119–120 (Mo. banc 1998) (citations omitted). This "continuing care" exception applies where the treatment continues and is of such a nature as to charge the medical defendant with the duty of continuing care and treatment that is essential to recovery. *Id.* In *Weiss,* the treating physician noted in medical records in April 1991 that the patient was to return in three months, but the patient never made a subsequent appointment. *Id.* at 116, 120. The Missouri Supreme Court held that "[t]he failure of Ms. Weiss to comply with the doctor's instruction and to return for continued treatment terminated the physician/patient relationship between the two and started the running of the statute within a reasonable time after July of 1991[.]" *Id.* at 120.

Here, contrary to the trial court's findings, material facts are in dispute as to when Norman's relationship with Dr. Lehman ended, thus starting the running of the statute of limitations. All parties agree that Dr. Lehman last examined and treated Norman on November 7, 2006. However, Dr. Lehman's notes for that last visit indicate that both Norman and Dr. Lehman contemplated continuing care past that date, and that Dr. Lehman adjusted Norman's medication, though the record does not reflect whether Norman had a prescription from Dr. Lehman "bumping up" the pain medicine. The record does not show whether Norman made another appointment with Dr. Lehman. Similarly, the trial court's alternate basis for granting summary judgment in favor of Dr. Lehman also rests on disputed material facts as to whether Norman created a new physician-patient relationship with Dr. Beyer on November 10, 2006. Nothing in the record indicates that the person who contacted Dr. Beyer's office on November 10 had the authority to act on Norman's behalf. Dr. Beyer testified that the pre-liminary tests that he ordered were "not treatment[,]" and that "[a]nalysis would be a better term." However, Dr. Beyer considered himself to be Norman's treating orthopedic surgeon as of November 10. Based on this record, the trial court's legal conclusion that Dr. Lehman's duty of continuing care ended on November 7, 2006, rests on disputed material facts; therefore, summary judgment on that basis was improper. Point sustained.

We reverse and remand to the trial court for further proceedings in accordance with this opinion.

SHERRI B. SULLIVAN, P.J., and LAWRENCE E. MOONEY, J., concur.