

# SUPREME COURT OF MISSOURI
## en banc

SHARON NEWTON AND              )        *Opinion issued March 31, 2020*
BRIAN NEWTON,                  )
                              )
            Appellants,        )
                              )
v.                            )        No. SC97687
                              )
MERCY CLINIC EAST COMMUNITIES  )
D/B/A MERCY CLINIC OB/GYN, AND )
CHRISTINA KAY MEDDOWS-JACKSON, )
M.D.,                         )
                              )
            Respondents.       )

## APPEAL FROM THE CIRCUIT COURT OF ST. LOUIS COUNTY
The Honorable Stanley J. Wallach, Judge

Sharon and Brian Newton (collectively, "the Newtons") appeal the judgment of

the circuit court sustaining a motion for summary judgment in favor of Mercy Clinic East

Communities d/b/a Mercy Clinic OB/GYN ("Mercy Clinic") and Christina Kay

Meddows-Jackson, M.D. ("Dr. Meddows-Jackson"). The Newtons argue the circuit

court erred in granting summary judgment because genuine issues of material fact existed

as to whether their medical malpractice action was timely because the continuing care

doctrine applied to toll the two-year statute of limitations. This Court has jurisdiction

under article V, section 10 of the Missouri Constitution. Because the uncontested facts

before the circuit court in the motion for summary judgment show that the Newtons' medical malpractice action was time-barred, the judgment of the circuit court is affirmed.

## Background

The Newtons brought this medical malpractice action against Mercy Clinic and Dr. Meddows-Jackson, alleging Dr. Meddows-Jackson provided negligent post-operative care to Sharon Newton following an ovarian cyst removal procedure. The timeline of this case begins July 5, 2012, when Ms. Newton presented to Dr. Meddows-Jackson with an ovarian cyst.

On July 10, 2012, Dr. Meddows-Jackson surgically removed Ms. Newton's cyst. She then saw Ms. Newton three separate times between July 16, 2012, and August 1, 2012, for post-operative care. During that time, Ms. Newton developed an infection. As a result, Dr. Meddows-Jackson admitted Ms. Newton to the hospital and a specialist began treating Ms. Newton's infection. After this hospitalization, Dr. Meddows-Jackson saw Ms. Newton on September 11, 2012, for a follow-up appointment, at which time Ms. Newton was cleared to return to work. On February 5, 2013, Dr. Meddows-Jackson saw Ms. Newton again for a post-operation evaluation. Finally, Ms. Newton saw a different Mercy Clinic doctor, Dr. McBride, on June 18, 2013, for treatment.

After the appointment on February 5, 2013, Ms. Newton did not see Dr. Meddows-Jackson again until January 29, 2015, when Ms. Newton presented for a general gynecological exam. At this January 2015 appointment, Ms. Newton explained she was having difficulty conceiving, which prompted Dr. Meddows-Jackson to order diagnostic testing. The testing revealed Ms. Newton's fallopian tubes were damaged. To

2

treat this damage, Ms. Newton underwent a procedure by another physician. Dr. Meddows-Jackson last saw Ms. Newton on June 9, 2015, for general gynecological care.

The Newtons then filed this suit on June 1, 2016. In the Newtons' petition, they allege Mercy Clinic and Dr. Meddows-Jackson were negligent between approximately July 16, 2012, and August 1, 2012, during Ms. Newton's post-operative care. They also claim that, as a result of this alleged negligence, the post-operative infection resulted in Ms. Newton's infertility and related complications, which were treated by Dr. Meddows-Jackson and Mercy Clinic doctors until 2015.

After raising the statute of limitations as an affirmative defense in their answer, Mercy Clinic and Dr. Meddows-Jackson filed a motion for summary judgment in the circuit court. Mercy Clinic and Dr. Meddows-Jackson argued the Newtons' claim was time-barred because, even assuming the continuing care tolling doctrine applied, it did not toll the statute of limitations until June 1, 2014, which would be necessary to make the Newtons' suit timely. The circuit court sustained the motion for summary judgment. The Newtons appeal.

## Analysis

The Newtons claim the circuit court erred because a genuine issue of material fact exists over whether the continuing care tolling doctrine applied in their case and, more precisely, when that tolling ended. According to the Newtons, the evidence showing that the 2015 visits concerned consequences of the 2012 negligence in treating Ms. Newton's infection is enough to create a genuine issue of material fact as to when the necessity that

3

gave rise to Dr. Meddows-Jackson's duty of continuing care ceased and, therefore, when the continuing care tolling period ended. For the reasons set forth below, the Court rejects this argument.

## I.

Under Missouri law, medical malpractice actions must generally be brought within two years of the date of the alleged act of negligence. § 516.105.[1] There are four circumstances under which the two-year statute of limitations may be tolled. Three of the exceptions are statutory: (1) when a foreign object is left in the body, (2) when there is a negligent failure to inform the patient of medical test results, and (3) when the person bringing the action is a minor younger than 18 years of age. § 516.105(1)-(3). None of these statutory exceptions are applicable here.

The fourth exception, commonly referred to as the continuing care exception, arises out of common law and is the exception the Newtons rely on in their case. This Court first recognized the continuing care tolling doctrine in *Thatcher v. De Tar*, 173 S.W.2d 760 (Mo. 1943). In that case, the Court explained the statute of limitations does not begin to run if the physician's "treatment is continuing and of such nature as to charge the medical man with the duty of continuing care and treatment which is essential to recovery …." *Id.* at 762. This exception is to ensure that a patient – facing the short statute of limitations imposed by statute – is not faced with the impossible choice of

---

[1] All statutory references are to RSMo 2016 unless otherwise noted.

either disturbing a course of treatment by initiating suit against a caregiver or losing a viable cause of action.

The Court addressed the *Thatcher* exception more thoroughly in *Weiss v. Rojanasathit*, explaining:

> The duty to attend the patient continues [and, therefore, the statute of limitations is tolled] *so long as required* unless the physician-patient relationship is ended by (1) the mutual consent of the parties, (2) the physician's withdrawal after reasonable notice, (3) the dismissal of the physician by the patient, or (4) the *cessation of the necessity* that gave rise to the relationship. Absent good cause to the contrary, where the doctor knows or should know that a condition exists that requires further medical attention to prevent injurious consequences, the doctor must render such attention or must see to it that some other competent person does so until termination of the physician-patient relationship.

975 S.W.2d 113, 119-20 (Mo. banc 1998) (internal citations omitted) (emphasis added).

Under *Weiss*, a physician's "duty to [provide continuing care for] the patient continues *so long as required*[.]" *Id.* (emphasis added). The fourth method set out in *Weiss* is the outer limit to which the duty of "continuing care" can extend – i.e., a physician's duty to provide continuing care to the patient is "required" until the necessity that gave rise to the care relationship has ended. *Id.* The other three methods set forth in *Weiss* are simply ways in which the duty to provide continuing care can terminate prior to the cessation of the necessity that gave rise to that duty. *Id.* Stated differently, the duty to provide "continuing care" ends when the necessity that gave rise to that duty has ended unless, before the cessation of that necessity, the parties terminate that duty by jointly agreeing to end the relationship, the physician withdraws after reasonable notice, or the

5

patient dismisses the physician. *Id.* Respondents do not contest the validity of the *Thatcher* exception, only its application to the undisputed facts of this case.

The parties focus much of their arguments on the last sentence from *Weiss* quoted above and argue whether the facts that Dr. Meddows-Jackson knew or should have known somehow impacted whether (and for how long) Dr. Meddows-Jackson owed Ms. Newton a duty of continuing care. This misreads *Weiss* and misperceives the nature of the continuing care tolling doctrine announced in *Thatcher*. The last sentence from *Weiss* quoted above does not describe how long the duty of continuing care (and, therefore, the tolling of the statute of limitations) lasts. As explained above, that is the function of the first sentence of the quoted portion from *Weiss*. Instead, the second sentence merely describes what "[t]he duty to attend the patient" entails, which is not at issue in this case. The sole methods for determining when the duty of continuing care (and, therefore, the tolling period) ends are the four events highlighted in the first sentence of the quoted portion of *Weiss*. *See Weiss*, 975 S.W.2d at 119-20; *Montgomery v. S. Cty. Radiologists, Inc.*, 49 S.W.3d 191, 194 (Mo. banc 2001). And, of consequence in this case, the fourth method (i.e., the date on which the necessity that gave rise to the duty ended) is to be determined using an objective standard without inquiry into what the physician knew or should have known.

## II.

Appellate review of the grant of summary judgment is essentially *de novo*. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "The criteria on appeal for testing the propriety of summary judgment are no

6

different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially." *Id.* This Court reviews the record in the light most favorable to the party against whom judgment was entered. *Id.* "Summary judgment is appropriate when the moving party has [established], on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law." *Am. Fed'n of Teachers v. Ledbetter*, 387 S.W.3d 360, 362-63 (Mo. banc 2012).

Reviewing the record in the light most favorable to the Newtons, the circuit court did not err in sustaining the motion for summary judgment. Because Dr. Meddows-Jackson's duty of continuing care was not terminated by any of the first three methods listed in *Weiss*, this Court's analysis must focus on the fourth, i.e., when the necessity that gave rise to that duty ended. The Newtons' claims against Mercy Clinic and Dr. Meddows-Jackson arise out of the alleged negligent care Dr. Meddows-Jackson provided between July 16, 2012, and August 1, 2012. The necessity that gave rise to Dr. Meddows-Jackson's duty of continuing care to Ms. Newton was the surgical removal of an ovarian cyst and related post-operative care, including treatment of the surgical site infection. Both parties agree that the last date on which Dr. Meddows-Jackson treated that infection was February 5, 2013, and that the infection itself ended (at the latest[2]) June 18, 2013.

---

[2] There is some disagreement about when the surgical site infection actually ended (either in February 2013 or June 2013). This Court must review the facts in favor of the Newtons because they were the party against which summary judgment was entered. Regardless, June 2013 is well outside the two-year statute of limitations.

Accordingly, the uncontroverted material facts are that the necessity that gave rise to Dr. Meddows-Jackson's duty of continuing care ceased when the treatment for cyst removal and resulting surgical site infection ended, i.e., June 18, 2013, at the latest. Any tolling under the continuing care tolling doctrine ended that same day, and the Newtons had two years from that date to file suit. Because they failed to do so, their action is time-barred.

**III.**

The Newtons contend the necessity that gave rise to Dr. Meddows-Jackson's duty to provide continuing care to Ms. Newton continued into 2015, when Ms. Newton returned with an injury allegedly caused by Dr. Meddows-Jackson's 2012 negligence. This not only misconstrues the appropriate test for determining the correct cessation date under the continuing care doctrine, as explained above, it also contravenes the legislature's and this Court's longstanding rejection of the discovery rule[3] in medical negligence actions.

The two-year statute of limitations set forth in section 516.105 requires all actions to be brought within two years of the date of the alleged negligence, irrespective of when the damage is discovered. *See Weiss*, 975 S.W.2d at 121. This Court has held "continuing or subsequently developing damages or injuries do not start the running of section 516.105 anew," and the statute of limitations commences to run upon the

---

[3] Under the discovery rule, the statute of limitations does not commence until discovery of the malpractice by the plaintiff (which is normally the discovery of an injury or damage). *See Laughlin v. Forgrave*, 432 S.W.2d 308, 313-14 (Mo. banc 1968), *superseded on other grounds by* § 516.105, RSMo Supp. 1976.

occurrence of the act of neglect, not upon the ascertainment of the damage resulting from the wrong. *Id.* at 119.

If treatment for consequences resulting from medical negligence were part of the doctor's duty of continuing care and served to toll the statute of limitations for so long as necessary to treat such consequences, then the continuing care tolling doctrine would simply be another name for the discredited discovery doctrine because the patient would not return for such treatment unless and until he or she discovered there were consequences necessitating treatment. The Court declines to stretch the continuing care tolling doctrine to that extent.

## Conclusion

For the reasons set forth above, the judgment of the circuit court is affirmed.

_____
Paul C. Wilson, Judge

All concur.

9