

# SUPREME COURT OF MISSOURI
## en banc

| | | |
|---|---|---|
| DANE TEMPLETON, | ) | *Opinion issued January 30, 2024* |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | No. SC100089 |
| | ) | |
| CHARLES ORTH, D.O., | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| ORTHOPEDIC SURGEONS, INC., | ) | |
| | ) | |
| Respondents. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF CLAY COUNTY**
The Honorable David Paul Chamberlain, Judge

Dane Templeton appeals the circuit court's judgment sustaining a motion for summary judgment in favor of Dr. Charles Orth and Orthopedic Surgeons Inc. (collectively, "Dr. Orth"). Templeton argues the circuit court erred in sustaining the motion for summary judgment because genuine issues of material fact exist as to whether his medical malpractice action was timely. According to Templeton, his action was within the statute because the continuing care doctrine applied to toll the two-year statute of limitations. This Court has jurisdiction under article V, section 10 of the Missouri

Constitution. Because the uncontested facts before the circuit court show Templeton's medical malpractice action was time-barred, the circuit court's judgment is affirmed.

## BACKGROUND

On September 16, 2012, Templeton was thrown from the passenger seat of a golf cart into a tree and barbed wire fence. In the process, Templeton sustained an injury to his right knee and thigh. On September 18, 2012, Dr. Charles Orth operated on Templeton's injured leg. After surgery, Templeton returned to Dr. Orth for follow-up evaluations over the course of several months.

Dr. Orth did not provide any medical care to Templeton between his last post-operation check-up on December 6, 2012, and December 10, 2015, when Templeton returned to Dr. Orth because of swelling in his right knee. Dr. Orth operated on the knee again and provided follow up care through August 2016. On August 18, 2016, Dr. Orth prescribed an antibiotic. Templeton's last appointment with Dr. Orth was on August 29, 2016. During the appointment, Dr. Orth wrote Templeton a prescription for a pain relief drug and advised Templeton he would "see him in a month at least."

Meanwhile, Templeton's mother made an appointment for Templeton with an infectious disease doctor, Dr. Albert Eid on September 1, 2016. On September 2, 2016, Dr. Eid wrote Dr. Orth a letter regarding Templeton's visit.[1] Following Templeton's

---

[1] Because Dr. Eid updated Dr. Orth after Templeton's visit and Templeton merely consulted Dr. Eid and nothing more, Dr. Orth does not argue Templeton's visit to Dr. Eid terminated Templeton's continuing care relationship with Dr. Orth.

appointment, Dr. Eid ordered an orthopedic consultation at the University of Kansas Hospital.

As recommended by Dr. Eid, Templeton saw Dr. Michael Tilley, an orthopedic doctor at KU medical center, on September 7, 2016. During this appointment, Dr. Tilley reviewed Templeton's course of treatment with Dr. Orth and made the following entry in Templeton's chart:

> [I] had a lengthy discussion with the patient and his mother. I think he would have two options at this point in time. His first option would consist of prolonged suppressive antibiotic therapy. He has had what appears to be an appropriate course of IV antibiotics followed by oral antibiotics, which is probably suppressing things somewhat at this point in time; however, with this, the problem will not go away and this is something he will likely need to manage for the rest of his life. His other option would be to the stop the antibiotics and see if things worsen. If things were to worsen, this would confirm that this is most likely infectious related, which I do think is the case. We would then plan for a very aggressive series of surgical debridements with delivery of high concentrated local antibiotics to the area.

Templeton elected Dr. Tilley's second option and – without consulting Dr. Orth – stopped taking the antibiotics. As Dr. Tilley predicted, the infection in Templeton's leg worsened.

On October 11, 2016, Dr. Tilley reviewed Templeton's MRIs and identified two masses in his thigh. That same day, Dr. Tilley performed surgery on Templeton's thigh and removed two pieces of wood that had been left in the leg after his 2012 accident. After surgery, Templeton continued seeing Dr. Tilley for post-operative care and did not see Dr. Orth again.

3

On October 9, 2018, Templeton sued Dr. Orth and Orthopedic Surgeons, Inc. Templeton alleged that, among other things, Dr. Orth was negligent in his failure to appropriately recognize, evaluate, treat and otherwise resolve Templeton's condition. Dr. Orth filed an answer and raised the affirmative defense that Templeton's cause of action was barred by the two-year statute of limitations in section 516.105.[2]

Dr. Orth moved for summary judgment on the statute of limitations ground. In his motion, Dr. Orth asserted Templeton terminated the 2015-2016 physician/patient relationship when Templeton sought care and treatment from Dr. Tilley without following up with Dr. Orth. The circuit court sustained Dr. Orth's motion, concluding as a matter of law that Templeton's lawsuit was barred by the statute of limitations. Templeton appeals.

**STANDARD OF REVIEW**

This Court reviews grants of summary judgment *de novo*. *Green v. Fotoohighiam*, 606 S.W.3d 113, 115 (Mo. banc 2020). Summary judgment is proper only if the moving party establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Id.* A genuine issue of fact exists when the record contains competent evidence that two plausible, but contradictory, accounts of essential facts exist. *ITT Comm. Fin. Corp v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 382 (Mo. banc 1993). In reviewing summary judgment on appeal, the record is viewed in the light most favorable to the party against whom summary judgment was

---

[2] All statutory references are to RSMo Supp. 2018 unless otherwise noted.

entered. *Id.* That party is entitled to all reasonable inferences from the record. *Id.* Generally, the running of a statute of limitations is a question of law for the court to decide. *Powel v. Chaminade Coll. Preparatory Inc.*, 197 S.W.3d 576, 585 (Mo. banc 2006). When the evidence allows for different conclusions as to whether the statute has run, however, it is a question of fact for the jury to decide. *Id.*

## ANALYSIS

Templeton argues the circuit court erred because a genuine issue of material fact exists over whether the continuing care tolling doctrine applied in his case and when that tolling ended. Reviewing the record in the light most favorable to Templeton, there is no genuine issue of material fact as to whether the statute of limitations had run, and the circuit court did not err in sustaining Dr. Orth's motion for summary judgment.

Generally, according to Missouri law, medical malpractice suits must be brought within two years of the date of the alleged act of negligence. §516.105.1. One exception to this two-year limitation is the common law doctrine commonly referred to as the continuing care exception. The Court first recognized this exception in *Thatcher v. De Tar*, 173 S.W.2d 760 (Mo. 1943). There, the Court announced that the statute of limitations does not begin to run if the physician's "treatment is continuing and of such a nature as to charge the medical man with the duty of continuing care and treatment which is essential to recovery …." *Id.* at 762. The continuing care exception exists so the patient, in the face of a short statute of limitations, is not forced to choose between interrupting a course of treatment by suing their physician or losing their cause of action.

5

Since *Thatcher*, this Court has outlined the continuing care exception more thoroughly in two cases: *Weiss v. Rojanasathit*, 975 S.W.2d 113 (Mo. banc 1998), and *Newton v. Mercy Clinic East Communities*, 596 S.W.3d 625 (Mo. banc 2020). In *Weiss*, this Court explained:

> The duty to attend the patient continues [and, therefore, the statute of limitations is tolled] so long as required unless the physician-patient relationship is ended by (1) the mutual consent of the parties, (2) the physician's withdrawal after reasonable notice, (3) the dismissal of the physician by the patient, or (4) the cessation of the necessity that gave rise to the relationship. Absent good cause to the contrary, where the doctor knows or should know that a condition exists that requires further medical attention to prevent injurious consequences, the doctor must render such attention or must see to it that some other competent person does so until termination of the physician-patient relationship.

975 S.W.2d at 119-20 (internal citations omitted).

The fourth method identified in *Weiss*, i.e., the cessation of the necessity that gave rise to the relationship, is "the outer limit to which the duty of 'continuing care' can extend. *Newton*, 596 S.W.3d at 628. The other three are means by which the continuing care relationship can end before treatment is no longer necessary. *Id.* "Stated differently, the duty to provide 'continuing care' ends when the necessity that gave rise to that duty has ended unless, before the cessation of that necessity, the parties terminate that duty by jointly agreeing to end the relationship, the physician withdraws after reasonable notice, or the patient dismisses the physician." *Id.*

Dr. Orth argues that continuing treatment of Templeton ended by the third *Weiss* method — the dismissal of the physician by the patient. The Court addressed this method in *Weiss*. There, Weiss saw a doctor for a gynecological exam and was told the doctor

6

would not contact her unless the results of the test were abnormal but to return to the office in three months. *Weiss*, 975 S.W.2d at 116. Weiss' results were abnormal, but the doctor did not contact her. *Id.* Contrary to the doctor's instructions, Weiss did not return to the office. *Id.* A few years later, Weiss underwent another gynecological exam with a different doctor, revealing she had cancer. *Id.* Weiss sued the original doctor for negligence. *Id.* This Court concluded Weiss' failure "to comply with the doctor's instruction and to return for continued treatment terminated the physician/patient relationship between the two and started the running of the statute within a reasonable time[.]" *Id*. at 120.

Here, Templeton (1) sought a second opinion from Dr. Tilley, (2) received an alternative treatment plan from Dr. Tilley, and (3) consciously chose to follow Dr. Tilley's plan by discontinuing the antibiotics Dr. Orth prescribed without further consultation with Dr. Orth. Based on these three actions, all of which indisputably occurred before October 9, 2016, the only reasonable inference is that Templeton intended to terminate the physician/patient relationship with Dr. Orth at that time. Taken alone, any one of these actions may not have been enough to terminate the continuing care relationship. But even viewing these facts in the light most favorable to Templeton, the combination of these three actions ended Templeton's continuing care relationship with Dr. Orth before October 9, 2016. Therefore, Templeton's suit against Dr. Orth, filed on October 9, 2018, is barred by the two-year statute of limitation in section 516.105.

In *Weiss*, this Court found Weiss' conduct of failing to make an appointment as directed by her doctor manifested her intent to end the continuing care relationship with

7

her physician even though she never expressly stated she was doing so. *Id.* The present case is even clearer. Templeton did not merely fail to make and keep follow up appointments. Instead, he actively pursued an alternative treatment plan and – without consulting Dr. Orth – chose to follow that alternative approach and stop taking the antibiotics Dr. Orth had prescribed.

Templeton asserts that, under *Weiss*, the continuing care relationship must always last for a "reasonable time" after the last appointment with the doctor. According to Templeton, therefore, the continuing care relationship continued even after Templeton met with Dr. Tilley because a reasonable time did not lapse between his last appointment with Dr. Orth (on August 29, 2016) and his first meeting with Dr. Tilley (on September 7, 2016). Templeton misstates this Court's holding in *Weiss*. *Weiss* did not hold the physician/patient continuing care relationship always continues for a reasonable time after the patient's last appointment with the physician. Instead, because Weiss passively ended her relationship with the doctor by failing to make and keep the suggested follow-up appointment, this Court held it was an inescapable inference that Weiss intended to terminate that relationship as soon as it was clear she did not intend to return, i.e., a reasonable period following her last appointment. Here, on the other hand, Templeton's continuing care relationship with Dr. Orth ended actively, not passively. It ended when – without consulting Dr. Orth – Templeton chose to stop following his treatment plan and started following the treatment plan Dr. Tilley suggested. When Templeton took these actions, he terminated his continuing care relationship with

8

Dr. Orth regardless of whether a "reasonable time" had passed since Templeton's last appointment.

Templeton also argues his suit was timely because his physician/patient relationship with Dr. Orth ended by the fourth circumstance described in *Weiss*, i.e., the cessation of the necessity that gave rise to the relationship. According to Templeton, the necessity of Dr. Orth's treatment ended when Dr. Tilley performed surgery on October 11, 2016 (i.e., two days less than two years prior to Templeton's suit being filed) because that is when Dr. Tilley operated to remove the infection. This is incorrect. The fourth method in *Weiss* describes the outer bounds of the continuing care relationship. Determining when the necessity that gave rise to the physician/patient relationship ceased is irrelevant if that relationship was terminated earlier by one of the other three methods described in *Weiss*. Templeton terminated the continuing care relationship before the necessity ended when he saw Dr. Tilley, received an alternative treatment plan, consciously chose to follow Dr. Tilley's treatment plan, and stopped taking the antibiotics Dr. Orth had prescribed.[3]

Templeton also contends he did not choose to terminate his relationship with Dr. Orth until he decided to have Dr. Tilley perform surgery on October 10, 2016. The key

---

[3]   Even though the cessation of the necessity that gave rise to the physician/patient relationship is irrelevant to Templeton's claims regarding Dr. Orth's treatment from 2015 into 2016, it does apply to Dr. Orth's treatment in 2012. Templeton saw Dr. Orth for treatment after his accident in 2012, which started the continuing care relationship with respect to that accident. That relationship ended when Dr. Orth released Templeton from further care because the necessity of treatment had ended. A new continuing care relationship began in 2015 when Templeton began seeing Dr. Orth again.

inquiry for purposes of determining when the statute of limitations began to run, however, is identifying the earliest date on which the undisputed facts unmistakably demonstrate Templeton intended to terminate his physician/patient relationship with Dr. Orth. And as explained above, this was the date on which he chose to start following Dr. Tilley's treatment plan and stop taking the antibiotics Dr. Orth had prescribed. The fact that Templeton later took additional actions manifesting this intent is irrelevant for purposes of determining when the statute of limitations began to run.

Finally, Templeton asserts that, under the continuing care doctrine, he could not have terminated the relationship with Dr. Orth merely by seeking a second opinion. *See Norman v. Lehman,* 347 S.W.3d 611, 615 (Mo. App. 2011) (holding that material facts were in dispute as to when the continuing care relationship ended when the patient merely sought a second opinion). This principle is correct but inapplicable. Templeton did not merely receive a second opinion from Dr. Tilley; he obtained an alternative treatment plan from Dr. Tilley and then consciously chose to start following Dr. Tilley's advice and stop taking the antibiotics Dr. Orth prescribed. It is the combination of these three actions that unmistakably signaled his intent to end the continuing care relationship with Dr. Orth. Because the undisputed facts show Templeton ended his physician/patient relationship with Dr. Orth before October 9, 2016, Dr. Orth was entitled to judgment, as a matter of law, that Templeton's suit (filed October 9, 2018) is barred by the two-year statute of limitations in section 516.105.

10

**CONCLUSION**

For the reasons set forth above, the judgment of the circuit court is affirmed.


_____
Paul C. Wilson, Judge

Russell, C.J., Powell, Fischer, Ransom
and Broniec, JJ., concur.
Gooch, J., not participating.